IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STATE OF ALABAMA, *et al.*,          )
                                     )
      Plaintiffs,                   )
                                     )
vs.                                  )     CIVIL ACTION NO. 85-0642-CG-C
                                     )
ALABAMA WOOD TREATING                )
CORPORATION, INC., *et al.*,         )
                                     )
      Defendants.                   )

## ORDER

This matter is before the court on the amended motions of defendants, Illinois Central Gulf Railroad Company ("Illinois Central") and Reilly Tar & Chemical Corp. ("Reilly") to dismiss (Docs. 177 & 180), plaintiffs' response thereto (Doc. 205), defendants' replies (Docs. 211 & 213), plaintiffs' response to defendants' replies (Doc. 216), Reilly's motion to strike plaintiffs' "new arguments" or in the alternative motion for oral argument (Doc. 217), and plaintiffs' response thereto (Doc. 218). The court finds that plaintiffs' natural resource claim under § 107(f) is due to be dismissed because plaintiffs failed to allege proper damages. However, the court will grant plaintiffs' leave to allege proper damages under § 107(f). To the extent plaintiffs have alleged a claim under 42 U.S.C. § 6973, that claim is also due to be dismissed. The court also finds that plaintiffs' state law claims are preempted and should be dismissed to the extent they seek compensatory damages or cleanup and containment. The court further finds that to the extent plaintiffs' state law claims seek punitive damages, the following claims are due to be dismissed: concealment and/or suppression (Claims Five & Six) to the extent they seek to recover for concealment and/or suppression of facts of which defendants did not have actual knowledge, plaintiffs' Eighth Claim for relief (as duplicative), plaintiffs' claim

for abnormally dangerous activity against Illinois Central, and plaintiffs' claim for trespass against Illinois Central.  The court finds all plaintiffs' other claims are not due to be dismissed. Thus, defendants' amended motions to dismiss are due to be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Plaintiffs filed this action alleging claims under the Comprehensive Environmental Response, Compensation and Litigation Act and the Resource Conservation and Recovery Act as well as various state law claims.  The original complaint was filed on May 6, 1985.  Defendants moved to dismiss the complaint; however, before the motion was ruled on, the parties agreed to form a joint technical committee for the purpose of funding and managing a remediation of the property.  The court entered a partial consent decree on October 7, 1986, staying the litigation. (Doc. 118).  Under the consent decree, the applicable statutes of limitations, limitations of actions, and application of the doctrine of laches were tolled with respect to any then existing causes of action "whether brought, or which could be brought, in this action or any new action while this stay is in effect..."  On December 14, 2004, plaintiffs moved to lift the stay. (Doc. 144).  The court granted plaintiffs' motion and ordered defendants to answer the complaint as amended. (Docs. 145 & 148).  Defendants, Reilly and Illinois Central, thereupon renewed their motions to dismiss. (Docs. 177 & 180).

## II. DISMISSAL STANDARD

A motion to dismiss should not be granted "unless the plaintiff can prove no set of facts which would entitle him to relief."  <u>Martinez v. American Airlines, Inc.</u>, 74 F.3d 247, 248 (11th

Cir.1996) (quoting <u>Peterson v. Atlanta Housing Authority</u>, 998 F.2d 904, 912 (11th Cir.1993)). In making this determination, the court must "take all the allegations in the complaint as true, and view the complaint in the light most favorable to the plaintiff." <u>Id.</u>  Upon a motion to dismiss, the scope of the review is limited to the four corners of the complaint. <u>St. George v. Pinellas County</u>, 285 F.3d 1334, 1337 (11th Cir. 2002) (citations omitted).  Dismissal should be granted pursuant to Rule 12(b)(6) if a complaint lacks an allegation regarding an element necessary to obtain relief.  <u>See</u> <u>Pyles v. United Air Lines, Inc.</u>, 79 F.3d 1046, 1049 (11th Cir. 1996); <u>Quiller v. Barclays American/Credit, Inc.</u>, 727 F.2d 1067, 1069 (11th Cir.1984), <u>adhered to en banc</u>, 764 F.2d 1400 (11th Cir.1985), <u>cert. denied</u>, 476 U.S. 1124 (1986).  The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." <u>Little v. City of North Miami</u>, 805 F.2d 962, 965 (11th Cir.1986).

### III. ANALYSIS

**A. Motion to strike or for oral argument**

Defendant Reilly moves to strike what it considers to be "new arguments" presented in plaintiffs' response to defendants' replies.  The court, after reviewing the parties' pleadings, finds that the arguments at issue are simply responsive to defendants' replies and are not untimely.  The court further finds oral argument to be unnecessary.

**B. Motions to dismiss**

Defendants move to dismiss:

(1.)  all of plaintiffs' claims for failure to prosecute;

(2.)  Counts One and Two for failure to state a cause of action under § 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act

("CERCLA") because:

> (a.)  plaintiffs' CERCLA claims were already dismissed, (b.) plaintiffs are potentially responsible parties themselves, (c.) there was no "National Contingency Plan," (d.) plaintiffs are not trustees designated by the State, (e.) the damages and the release did not occur "wholly before December 11, 1980," and (f) damages were not properly alleged.

(3.)  Count Three for failure to state a claim under the Resource Conservation and Recovery Act ("RCRA") because:

> (a.)  defendants did not own or operate the property during times when RCRA imposed any obligations and any imminent and substantial endangerment to health or the environment has already been remedied, (b.) RCRA does not provide a remedy for cleanup costs, and (c.) plaintiffs lack standing under § 6973 because they are not the administrator of the USEPA; and

(4.)  all of plaintiffs' state law claims (a) because they are pre-empted by CERCLA and (b) for failure to state a claim upon which relief can be granted.

## 1. Failure to prosecute

Illinois Central contends that this case should be dismissed for failure to prosecute. According to Illinois Central, the State Docks dissolved the Joint Technical Committee in 1997 and "thereafter embarked on a unilateral course of work at the site." (Doc. 177, p. 3).  Illinois Central contends that, because plaintiffs waited nearly eight years to renew their action, it will be extremely difficult to locate the necessary documents and witnesses needed for defense of this action.  Plaintiffs respond that defendant has offered no evidence to support its allegations and that because strict liability is imposed by CERCLA, defendant has no defense.   In addition, plaintiffs submit that defendant was free to move to lift the stay earlier and that defendant has offered no authority for dismissing a stayed case for failure to prosecute.

After reviewing the history of this case and the parties' arguments, the court finds it

inappropriate to dismiss this case for lack of prosecution.  The parties are bound by the consent

decree which states that the applicable statutes of limitations, limitations of actions, and

application of the doctrine of laches were tolled.  Plaintiffs and defendant agreed that the case

should be stayed, and it remained stayed until December 16, 2004. (Doc. 145).   If defendant

believed that any liability it had for the claims asserted in the complaint had been fulfilled or that

the agreement between the parties had dissolved to the extent that a continuation of the litigation

was necessary, defendant could have sought a lift of the stay and dismissal of the complaint at

that time.  All parties knew that the case, although stayed, was still pending and would remain

pending until further action was taken by the parties or the court.  As such, the court will not

dismiss the case for lack of prosecution.

### 2. Failure to state a cause of action under CERCLA

### a. Current status of plaintiffs' CERCLA claims

Defendant Reilly contends that plaintiffs' CERCLA claims have already been dismissed

by the court.  Defendant refers to this court's order of May 5, 1986, (Doc. 105) which dismissed

all federal claims in the first amended complaint, with leave to amend.  The court found that the

federal claims were due to be dismissed because plaintiffs had not alleged that they had given

defendants 60 days notice as required under CERCLA at that time.[1]   The court reserved ruling

---

[1] At that time CERCLA § 112, 42 U.S.C. § 9612 (a), provided:
All claims which may be asserted against the Fund pursuant to section 111 of this
title shall be presented in the first instance to the owner, operator, or guarantor of
the vessel or facility from which a hazardous substance has been released, if
known to the claimant, and to any other person known to the claimant who may
be liable under section 107 of this title.  In any case where the claim has not been
satisfied within sixty days of presentation in accordance with this subsection, the
claimant may elect to commence an action in court against such owner, operator,
guarantor, or other person or to present the claim to the Fund for payment.

on any other issues raised by defendants' motions to dismiss.  On May 21, 1986, plaintiffs

amended the complaint to include the following paragraph:

> 28.(a) The State has not made a claim against the Fund – nor does the State intend
> to make a claim against the Fund – under Section 112 of CERCLA, 42 U.S.C.
> §9612, for any damages to natural resources or for any of its response costs.
>     (b) To the extent notice under Section 112(a) of CERCLA, 42 U.S.C.
> §9612(a), is required, defendants have been provided sufficient notice under the
> statute for this action against them to be maintained.

(Doc. 108).  No further decision was made by the court as to whether the above addition cured

the deficiency found in plaintiffs' original federal claims as plaintiffs, Reilly and Illinois Central,

moved for entry of a partial consent decree on August 27, 1986. (Doc. 116).   No claims were

ever dismissed from plaintiffs' third amended complaint.

To the extent defendant alleges that the CERCLA claims should be dismissed now

because they do not sufficiently allege the notice requirements, the court disagrees.  The court

notes that the parties dispute which version of CERCLA is applicable to plaintiffs' claims at this

point in the litigation.  The court finds the issue to be immaterial to its determination of the

present motion because plaintiffs have alleged in their complaint that "defendants have been

provided sufficient notice under the statute for this action against them to be maintained."  While

the notice allegation is conclusory, the notice pleading standard set forth in Federal Rule of Civil

Procedure 8 does not mandate that allegations be drafted with more detail.  The Federal Rules of

---

Courts were split on whether a demand letter was required for claims which did not actually
assert a claim against the Fund.  This court's order of May 5, 1986, followed the rulings of other
courts which held that the 60-day notice requirement applied to all claims for which parties are
made liable under § 9607(a). (Doc. 105, p. 3) (citing Bulk Distribution Centers, Inc. v. Monsanto
Co., 589 F. Supp. 1437 (S.D. Fla. 1984); and United States v. Allied Chemical Corp., 587
F.Supp. 1205 (N.D. Cal. 1984)).  Section 112 was later amended by the Superfund Amendment
and Reauthorization Act of 1986 ("SARA") to eliminate the need for a demand letter as a
condition precedent to a civil action.

Civil Procedure require only that a complaint include "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   A detailed statement of

the facts supporting a claim ordinarily is not required in federal practice. See Leatherman v.

Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160,

1163 (1993).

### b. Recovery under § 107(a) by Potentially Responsible Parties

CERCLA was enacted in response to the serious environmental and health risks posed by

industrial pollution. U.S. v. Bestfoods, 524 U.S. 51, 55, 118 S.Ct. 1876, 1881 (1998) (citing

Exxon Corp. v. Hunt, 475 U.S. 355, 358-359, 106 S.Ct. 1103, 1107-1108, 89 L.Ed.2d 364

(1986)).   "CERCLA provides two possible avenues for a party to recover monies it spends

cleaning up a polluted site." Blasland, Bouck & Lee, Inc. v. City of North Miami, 283 F.3d 1286,

1301 (11th Cir. 2002).   These two avenues were generally explained by the  Eleventh Circuit as

follows:

> One is a suit for direct cost recovery based on section 107(a) of the statute. 42
> U.S.C. § 9607. Direct cost recovery is available only to so-called "innocent
> parties," that is, "[p]arties who are not themselves liable or potentially liable for
> response costs under § 107(a) of CERCLA····" Redwing Carriers, Inc. v. Saraland
> Apartments, 94 F.3d 1489, 1513 (11th Cir.1996). In most instances, the only
> "innocent party" is the government agency that is forced to cleanup the land: "the
> typical section 107(a) action is brought by a governmental plaintiff that has
> expended taxpayer dollars in cleaning up a facility." Id. It "is possible that a
> private party may qualify as an 'innocent' plaintiff enabling it to bring a cost
> recovery action based on Section 107(a) alone," id., but, in practice, it is rare.
> Kaufman and Broad-South Bay v. Unisys Corp., 868 F.Supp. 1212, 1216
> (N.D.Cal.1994) ("a CERCLA plaintiff, other than the government, will rarely be
> 'innocent' and thus permitted to sue under [section 107]"). But see OHM
> Remediation Services v. Evans Cooperage Co., 116 F.3d 1574, 1581-82 (5th
> Cir.1997) (allowing a private contractor to proceed as a plaintiff under section
> 107(a)).
>                                * * * *
> The second avenue of recovery under CERCLA is a contribution suit under

> section 113 of the statute. 42 U.S.C. § 9613(f). A section 113 suit allows "guilty" parties "responsible parties" in CERCLA-decision jargon-who are liable for some of the cleanup costs, but have paid more than their fair share of those costs, to recover the amount of their excess payments from other parties who are also responsible for the pollution. See Redwing Carriers, 94 F.3d at 1513. Contribution suits are the only avenue of recovery available to a responsible party, which under CERCLA includes an owner of a facility where waste was dumped, an operator of a facility, an "arranger" of the disposal or treatment of hazardous waste at a facility, or an acceptor of waste for transportation or disposal. 42 U.S.C. § 9607(a).

Blasland, 283 F.3d at 1301 -1302.  Plaintiffs assert a claim for cost recovery under § 107(a).

Defendants contend that plaintiffs cannot recover under § 107(a) because plaintiffs are not "innocent" parties, but are instead potentially responsible parties ("PRP").  Under the Eleventh Circuit's Blasland decision quoted above, direct cost recovery based on §107(a) of the statute is available only to so-called "innocent parties," that is, "[p]arties who are not themselves liable or potentially liable for response costs under § 107(a) of CERCLA..." Blasland, 283 F.3d at 1302 (citation omitted).  Plaintiffs argue that because they are the State of Alabama and its agency, the Alabama State Docks Department, they can recover their response costs under § 107(a) regardless of whether they are PRPs.  (Doc. 205, p. 3).   Section 107(a) provides liability for:

> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
> (B) any other necessary costs of a response incurred by any other person consistent with the national contingency plan....

42 U.S.C. § 9607.  According to plaintiffs, the cases that hold that only "innocent parties" can bring cost-recovery actions under § 107(a) involve category (B) plaintiffs - private, non-governmental parties.  The majority of courts that have addressed this issue distinguish between governmental and private plaintiffs and conclude that the requirement that plaintiff be innocent

applies only to private owners and operators. See United States v. Gurley, 317 F. Supp. 2d 870,

883 (E.D. Ark. 2004) ("The cases cited by [the defendant] involve private parties, and not the

United States, a state or an indian tribe," and are therefore "clearly distinguishable" from actions

brought by the government.); California Dep't of Toxic Substances Control v. Alco Pac., Inc.,

217 F. Supp. 2d 1028, 1036 (C.D. Cal. 2002) (State department could maintain cost-recovery

action under § 107(a) regardless of whether it was itself a PRP);  United States v. Friedland, 152

F. Supp. 2d 1234, 1249 (D. Colo. 2001) ("I find that the government should be able to impose

joint and several liability upon private PRPs, even where the government agencies themselves

are deemed PRPs."); United States v. Monsanto Co., 182 F. Supp. 2d 385, 405 (D.N.J. 2000)

("Even assuming...that the United States may be a potentially responsible party under CERCLA,

the United States is still entitled to seek compensation for its response costs" under § 107(a));

United States v. Hunter, 70 F. Supp. 2d 1100, 1108 (C.D. Cal. 1999) ("[T]he Court is persuaded

that the government should be able to impose joint and several liability [under § 107(a)] upon

private PRPs, even when government agencies are themselves PRPs."); United States v.

Wallace, 961 F. Supp. 969, 975 (N.D. Tex. 1996) (State of Texas and United States' potential

liability as PRPs did "not affect [their] right[s] to full recovery of [their] response costs" under §

107(a)); Town of Wallkill v. Tesa Tape, Inc., 891F. Supp. 955, 959 (S.D.N.Y. 1995) (Cases like

Redwing were "inapposite" since "the plaintiffs bringing those actions were not governmental

entities...but were private owners and operators").  The legislative history of CERCLA supports

the same conclusion.  As the Friedland court noted, the House Energy and Commerce Committee

observed:

> [Section 113] does not affect the right of the United States to maintain a cause of
> action for cost recovery under Section 107 ... Whether or not the U.S. was an

owner or operator of a facility of a generator of waste at the site.

152 F. Supp. 2d at 1248 (quoting H.R. Rep. 99-253(I)).  A few courts have limited government

PRPs to claims under § 113.  See e.g. United States v. AMTRAK, 2004 U.S. Dist. LEXIS 10867

(E.D. Pa. June 15, 2004); In re Kaiser Group International, Inc., 289 B.R. 597 (Bankr. D. Del.

2003); United States v. Scott's Liquid Gold, 934 F.Supp. 362 (D. Colo. 1996).  This court is

unpersuaded by these minority decisions.  AMTRAK and Kaiser based their conclusion

primarily on decisions that addressed the claims of private entities.[2]   The decision of the

District of Colorado in Scott's Liquid Gold, "addressed the issue only in passing" and the court,

in a later case, disagreed with the decision, stating that it was not persuasive. Friedland, 152

F.Supp.2d at 1249 n. 5.

Defendants also contend that the cases allowing governmental PRPs to recover under §

107(a) are inapplicable because in each the government was bringing the claim in its

"enforcement capacity."  In the instant case plaintiffs, although they consist of the State and an

---

[2] One of the decisions on which AMTRAK and Kaiser based their conclusion was New Castle County v. Halliburton NUS Corp., which stated that "[a]n action brought by a potentially responsible person is by necessity a section 113 action for contribution." New Castle, 111 F.3d 1116, 1120 (3d Cir. 1997).  In New Castle, the plaintiffs included a governmental entity, New Castle County; however, there is no indication that the Court considered the county or other plaintiffs to be state or federal entities.   Category (A) plaintiffs include "the United States Government or a State or an Indian tribe," not a county.  Another decision cited by Kaiser, United States v. Colorado & Eastern Railroad Co., stated that:
> Whatever label Farmland may wish to use, its claim remains one by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make. Accordingly, we hold, as a matter of law, that Farmland's claim is controlled by § 113(f) and that the district court erred in proceeding under § 107.

Colorado & Eastern Railroad, 50 F.3d 1530, 1536 (10th Cir. 1995).  Defendants appear to put great weight on the first part of the statement: "[w]hatever label Farmland may wish to use." However, Farmland Industries, Inc. appears to be a private corporation and nothing in the case indicates Farmland could be labeled a governmental entity.

agency of the State, are the owners of the property in question.  To support their contention,

defendants point to the fact that some courts which have allowed the claims of governmental

PRPs under § 107(a) have referred to the claims as having been brought in the government's

"enforcement capacity."  See e.g. Friedland, 152 F.Supp.2d at 1246-47 (agreeing that "its status

as a responsible party does not, as a matter of law, preclude the United States in its

environmental enforcement role from pursuing joint and several liability against potentially

responsible parties"); United States v. Hunter, 70 F.Supp.2d 1100, 1106-07 (C.D. Cal. 1999)

(government may bring § 107 action "where it has incurred response costs in its enforcement

capacity.").  However, the court finds the distinction is immaterial.  Section 107(a) does not

require that the United States, a State, or an Indian Tribe bring its claim in its enforcement

capacity and the courts that have used that term appear to put little emphasis on it.  In addition,

plaintiffs assert that they have in fact brought this action in their "enforcement capacity."

Defendants also contend that many of the cases cited by plaintiffs involved federal

plaintiffs, rather than state plaintiffs.  However, the court again finds the distinction to be

immaterial.   The statute lists the United States Government, a State, and an Indian tribe together

without distinction and the court is aware of no case law which has found such a distinction.

### c. Consistency with National Contingency Plan

As previously stated, § 107(a) provides that responsible parties shall be liable for "all

costs of removal or remedial action incurred by the United States Government or a State or an

Indian tribe not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A)

(emphasis added).

> The national contingency plan "is a series of regulations, promulgated by the
> [EPA], that establish the procedures and standards for government and voluntary

11

> response actions to hazardous substances...." <u>Marriott Corp. v. Simkins Indus.</u>,
> 929 F.Supp. 396, 403 (S.D.Fla.1996). Those regulations provide that a remedial
> action is consistent with the national contingency plan if it results in a "CERCLA
> quality cleanup." 40 C.F.R. § 300.700(c)(3)(ii). A "CERCLA-quality cleanup," in
> turn, is defined as a cleanup that is "protective of human health and the
> environment ... and ... cost effective." 55 Fed.Reg. 8666, 8793 (1990).

<u>Blasland</u>, 283 F.3d at 1295.  Where cost recovery claims are brought by the United States, a

State, or an Indian tribe, the defendant bears the burden of proving that the costs of a response

action were inconsistent with the national contingency plan. <u>See</u> <u>Miami-Dade County, Fla. v.</u>

<u>U.S.</u>, 345 F.Supp.2d 1319, 1334 (S.D. Fla. 2004) (citing <u>United States v. Findett Corp.</u>, 220 F.3d

842, 849 (8th Cir.2000); <u>United States v. Burlington N. R.R. Co.</u>, 200 F.3d 679, 695 (10th

Cir.1999); <u>United States v. Chapman</u>, 146 F.3d 1166, 1170-71 (9th Cir.1998)).  "Because the

instant case is one brought by one of the three parties listed in § 9607(a)(4)(B), its costs are

presumed to be consistent with the NCP." <u>Gurley</u>, 317 F.Supp.2d at 878 (quoting <u>United States</u>

<u>v. Findett Corp.</u>, 75 F.Supp.2d 982 (E.D.Mo.1999), aff'd, 220 F.3d 842 (8th Cir.2000)).

Accordingly, considering the standard for dismissal, the court will not dismiss claims at this

point in the litigation  based on defendants' contention that the response costs were expended in

a manner inconsistent with the National Contingency Plan.

### d. Designation of Trustees by the State

Defendants contend that plaintiffs are not authorized trustees and, therefore, do not have

standing to maintain a claim for natural resource claims.  Section 107(f)(2)(B) provides that the

"Governor of each state shall designate State officials who may act on behalf of the public as

trustees for natural resources under this chapter..." 42 U.S.C. § 9607(f)(2)(B).  However, this

provision was added by the 1986 SARA amendments and did not exist at the time this action was

filed. <u>See</u> <u>Town of Bedford v. Raytheon Co.</u>, 755 F.Supp. 469, 472 (D. Mass. 1991) ("the

Superfund Amendments and Reauthorization Act of 1986 ("SARA"), [] created a mechanism for states to appoint natural resource trustees to bring lawsuits seeking natural resource damages"). In addition, § 107(f)(2)(B) states only that the official "may act on behalf of the public as trustees." (emphasis added). Further, § 107(f)(1) provides that "liability shall be ... to any State for natural resources within the State." Neither CERCLA, nor any case law submitted by the parties prohibits the State from maintaining a claim for natural resource damages in its own name.

Illinois Central also contends that Alabama State Docks lacks standing because § 107(f)(1) prohibits double recovery. The court finds this argument lacks merit. If plaintiffs had each filed separate actions, the risk of double recovery would be real. However, defendants are properly protected here from double recovery as the court, in accordance with § 107(f)(1), will allow plaintiffs to recover the same element of damages only once.

### e. Occurrence of damages and release "wholly before December 11, 1980"

With respect to natural resource claims, § 107(f) includes the following limitation on recovery for natural resource damages:

> There shall be no recovery under the authority of subparagraph (C) of subsection (a) of this section where such damages and the release of a hazardous substance from which such damages resulted have occurred wholly before December 11, 1980.[3]

42 U.S.C.A. § 9607(f)(1). Defendant Reilly asserts that the natural resource claims are due to be dismissed because Reilly's involvement with the property at issue ended in 1972 when it sold the assets for its wood preservation operation. Defendant Illinois Central similarly argues that

---

[3] The date of CERCLA's enactment.

plaintiffs purchased the property from Illinois Central "at least by December of 1976" and,

therefore, it could not have caused a release after December 11, 1980.  However, to be relieved

of liability regarding natural resource damages, CERCLA requires that "the release and the

damages both occur pre-enactment." Coeur D'Alene Tribe v. Asarco Inc., 280 F. Supp. 2d 1094,

1114 (D. Idaho 2003) (holding that damages caused by the dumping of mine tailings years

before the enactment of CERCLA in December 1980 were not barred by the "wholly before"

provisions of CERCLA section 9607(f)). Defendants argue that the facts of this case require the

finding that both the alleged releases and the damages occurred before December 1980.

Defendants' arguments appear to rely in part on the view that "[d]amages accrue or occur,

including restoration costs, when the underlying injury occurs." Montana v. Atlantic Richfield

Co., 266 F.Supp.2d 1238, 1242 (D. Mont. 2003) (rejecting argument "that restoration cost

damage does not 'occur' until either a trustee incurs expenses to restore the resource or

restoration costs are quantified by the Court").   Other courts have rejected defendants' argument

that the term "damages" as used in subsection 107(f) refers to the injury to natural resources, not

to the monetary quantification of that injury.  Aetna Casualty and Surety Co., Inc. v. Pintlar

Corp., 948 F.2d 1507, 1515 (9th Cir.1991); In re Acushnet River & New Bedford Harbor

Proceedings re Alleged PCB Pollution, 716 F.Supp. 676, 681 (D. Mass. 1989).  Such courts hold

that "damages" occur as a general rule when the property owner or some entity incurs expenses

due to the injury to natural resources. Acushnet, 716 F.Supp. at 683.  The term "damage" is  not

the same as "injury."  Damages are the "monetary quantification stemming from an injury." Id.

at 681.  This definition is consistent with CERCLA's stated definition of "damages" as "damages

for injury or loss of natural resources...." 42 U.S.C. § 9601(6).  The court is persuaded by the

Acushnet line of cases that find "damages" occur when expenses are incurred due to an injury to natural resources.

Moreover, plaintiffs' second amended complaint alleges that hazardous substances are continuing to be released, that "there is a substantial threat of further releases", and that as a result, natural resources "continue to be injured, destroyed, and/or lost." (Doc. 108, ¶¶ 24, 39, 43). "[W]hen releases or damages continue to occur post-enactment, [] recovery for natural resource damages which occur both pre- and post-enactment is appropriate. In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution, 716 F.Supp. 676 (D. Mass. 1989); see also State of Idaho v. Bunker Hill Co., 635 F.Supp. 665, 675 (D.Idaho 1986) ("Section 107(f) precludes liability under section 107(a)(4)(C) only where (1) all releases ended before December 11, 1980, and (2) no damages were suffered on or after December 11, 1980, as a result of the release."). "Release" is defined by CERCLA as:

> any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant) ...

42 U.S.C.A. § 9601(22). The definition of "release" is broader than that of "disposal" and can occur long after a party discharges, deposits, or otherwise disposes of a pollutant. See Coeur D'Alene Tribe, 280 F.Supp.2d at 1112-1113. The court must "take all the allegations in the complaint as true, and view the complaint in the light most favorable to the plaintiff." Martinez, 74 F.3d at 248. In addition, courts have interpreted the provision limiting relief to prospective damages as an exception to the statute and, therefore, held that the burden fell on defendant to

prove that the damages are barred by § 107(f)(1). <u>Acushnet</u>, 716 F.Supp. at 687; <u>see</u> <u>also</u> <u>U.S. v.</u>

<u>Asarco</u>, 1999 WL 33313132, *10 (D. Idaho 1999)(quoting <u>Acushnet</u>).

### f. Damage allegations

Illinois Central also contends that plaintiffs' natural resource claims fail because they

have failed to allege proper damages.  Defendant, citing <u>Acushnet</u>, asserts that to maintain a

claim for injury to natural resources under § 107, plaintiffs must have incurred quantifiable

damages. <u>Acushnet</u>, 716 F.Supp. at 681.  As stated above, the court is persuaded by the <u>Acushnet</u>

line of cases that "damages" occur when expenses are incurred due to an injury to natural

resources.  Plaintiffs have alleged "injury" to natural resources.  While the plaintiffs' allegation

mirrors the language of § 107(f), the court found above that the term "injury" as used in § 107(f)

is distinct from "damages."   While damages do not generally need to be pleaded with

specificity, the court finds plaintiffs' complaint lacks any allegation that damages exist.   Thus,

the court finds that plaintiffs' natural resource claims under § 107(f) are due to be dismissed.

However, the court finds it appropriate to grant plaintiffs leave to allege proper damages, if they

exist.

### 3. Failure to state a claim under RCRA

### a. Retroactivity of RCRA

Count three of plaintiffs' complaint asserts a claim under the Resource Conservation and

Recovery Act ("RCRA") which provides that a person[4] may commence a suit:

---

[4] A State is a "person" under RCRA. <u>U.S. Dept. of Energy v. Ohio</u>, 503 U.S. 607, 616, 112 S.Ct. 1627, 1634 (1992); 42 U.S.C.A. § 6903(15) (defining "person" as "an individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, association, State, municipality, commission, political subdivision of a State, or any interstate body and shall include each department, agency, and instrumentality of the United States").

(1)(A) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or

(B) against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment;

42 U.S.C.A. § 6972(a)(1).  Defendants contend that defendants never had any obligation under RCRA because neither owned or operated the property during the times when RCRA imposed any obligations.  Reilly states that it stopped using the property in April 1972 and plaintiffs allege they purchased the property on December 23, 1976.  Defendants contend that they could not be liable under RCRA because the Act was enacted by Congress October 21, 1976, and the first regulations were not promulgated until May 19, 1980, and hazardous waste was not regulated under RCRA until January 16, 1981.

Plaintiffs admit in their response that they may not maintain a claim under subparagraph (1)(A), but contend that they can maintain a claim under subparagraph (1)(B) because that portion of the Act applies retroactively. (Doc. 205 pp. 14-15).   Subparagraph (1)(B) provides liability for "past or present" generators, transporters, or owner or operators.  Thus, "the enactment dates of RCRA and its 1984 amendments are immaterial to liability under § 6972(a)(1)(B)." Aiello v. Town of Brookhaven, 136 F.Supp.2d 81, 114 (E.D. N.Y. 2001)

_____

(citations omitted). "[T]he endangerment must be ongoing, but the conduct that created the endangerment need not be." Id. (quoting Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co., 989 F.2d 1305, 1316 (2d Cir.1993)).

The second amended complaint alleges that defendants:

> have contributed to the past and present handling, storage, or disposal of solid and/or hazardous wastes at that property which may present an imminent and substantial endangerment to health or the environment...

(Doc. 106, ¶¶ 51, 52). Illinois Central concedes that subparagraph (1)(B) applies retroactively, but contends that the endangerment has already been remedied. However, as previously stated, the court, in making this determination, must "take all the allegations in the complaint as true, and view the complaint in the light most favorable to the plaintiff." Martinez, 74 F.3d at 248. After considering the four corners of the complaint, the court finds plaintiffs have sufficiently alleged the requisite elements under 42 U.S.C.A. § 6972(a)(1)(B) of past or present contributing conduct and present endangerment.

Defendants further contend that contributing to a present endangerment is not enough; that to recover under the RCRA, defendants' conduct must have violated RCRA at the time of the conduct. Defendants contend that their conduct could not have violated RCRA because RCRA was not in existence at the time of the conduct. Defendants appear to argue that to be liable under subparagraph (1)(B), defendants must have been "in violation of any permit, standard, regulation, condition, requirement, prohibition, or order" as required for liability under subparagraph (1)(A). Such an interpretation would render meaningless the separate provision of subparagraph (1)(B). As explained above, courts have held that (1)(B) applies retroactively, and that cannot be accomplished if there can be no liability for conduct that occurred prior to its

18

enactment.

### b. Proper remedies under RCRA

Defendants contend that plaintiffs cannot recover cleanup costs under RCRA because

RCRA affords no such remedy.  Section 6972(a) specifies the remedies available under RCRA.

> The district court shall have jurisdiction, ... to restrain any person who has
> contributed or who is contributing to the past or present handling, storage,
> treatment, transportation, or disposal of any solid or hazardous waste referred to
> in paragraph (1)(B), to order such person to take such other action as may be
> necessary, or both, or to order the Administrator to perform the act or duty
> referred to in paragraph (2), as the case may be, and to apply any appropriate civil
> penalties under section 6928(a) and (g) of this title.

42 U.S.C. 6972(a).   RCRA does not permit citizen suits for recovery of money spent on past

investigation and remediation efforts. See Meghrig v. KFC Western, Inc., 516 U.S. 479, 484, 116

S.Ct. 1251 (1996); Avondale Fed. Sav. Bank v. Amoco Oil Co., 170 F.3d 692, 694 (7th

Cir.1999).  "Instead, RCRA offers a private citizen a choice of two remedies: a mandatory

injunction, i.e., one that orders a responsible party to 'take action' by attending to the cleanup

and proper disposal of toxic waste, or a prohibitory injunction, i.e., one that restrains a

responsible party from further violating RCRA." Avondale, 170 F.3d at 694 (quoting Meghrig,

516 U.S. at 484, 116 S.Ct. 1251) (internal quotations omitted).  "Congress deliberately limited

RCRA's remedies to injunctive relief - - more specifically, injunctive relief obtained before the

property is cleaned up, while the danger to health or the environment is "imminent and

substantial." Id. (citing 42 U.S.C.  § 6972(a)(1)(B)).

Plaintiffs' RCRA claim contains the following prayer for relief:

Plaintiffs demand injunctive relief requiring Defendants to take the following
actions:

A. To carry out a study, under the supervision and subject to the approval of the

19

State of Alabama, of the extent of the contamination, including contamination of ground and surface waters and of the surrounding environment, of the property located at the East End of Virginia Street in Mobile, Alabama, or, alternatively, to fund such a study;

B.  To develop and implement, under the supervision and subject to the approval of the State of Alabama, a plan to prevent further contamination or, alternatively, to fund the developing and implementation of such a plan;

C.  To monitor, under the supervision and subject to the approval of the State of Alabama, the area at the East End of Virginia Street, including the ground and surface waters and surrounding environment, for further contamination, or alternatively, to fund such a monitoring effort;

D.  To decontaminate or remove, under the supervision and subject to the approval of the State of Alabama, all contaminated soil and other material at the site or, alternatively, to fund such a decontamination and removal effort;

E.  To restore, under the supervision and subject to the approval of the State of Alabama, any contaminated ground and surface waters or, alternatively, to fund such a restoration effort; and

F.  To take whatever other action this Court deems appropriate.

(Doc. 106, pp. 19-20).  The above demand for relief does not appear to seek past clean up costs.

Instead, the prayer for relief appears to seek an injunction ordering defendants to take action by

attending to the cleanup and restoration of the property.  Such relief is within the scope of

RCRA.

### c. Administrator of the USEP

Illinois Central contends that plaintiffs lack standing to maintain an action under 42

U.S.C. § 6973 because only the Administrator of the USEPA can bring suit under that statute.

Section 6973 provides:

Notwithstanding any other provision of this chapter, upon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on

20

behalf of the United States in the appropriate district court against any person (including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility) who has contributed or who is contributing to such handling, storage, treatment, transportation or disposal to restrain such person from such handling, storage, treatment, transportation, or disposal, to order such person to take such other action as may be necessary, or both. ...

42 U.S.C.A. § 6973.  Although Count Three cites and quotes § 6973, it is not clear whether plaintiffs intended to assert a claim under that section.  Count Three also cites the notice provision contained in § 6972 which requires that no action may be commenced under subsection (a)(1)(B) until ninety days after plaintiffs give notice of the endangerment to the Administrator, among others. 42 U.S.C. § 7972(a)(2)(A); (Doc. 106, ¶ 55).  The complaint then states that notice was served on the Administrator of the EPA. (Doc. 106, ¶ 56).  The court notes that plaintiffs have submitted no argument opposing defendants' contention that plaintiffs lack standing to maintain an action under 42 U.S.C. § 6973.  The court concludes that plaintiffs have either abandoned or never intended to assert a claim under § 6973.  To the extent the complaint asserts such a claim, it is due to be dismissed.

### 4. State law claims

#### a. Preemption by CERCLA

Defendants assert that plaintiffs' state law claims should be dismissed because they seek the same remedies available under CERCLA and are, therefore, preempted by CERCLA.  "[I]n enacting CERCLA, Congress did not explicitly preempt all state law, nor did it create a comprehensive scheme of regulation leaving no room for supplementation." In re Reading Co., 115 F.3d 1111, 1117 (3d Cir. 1997) (citation omitted).  In fact, CERCLA contains a "savings" statute which provides:

Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State.

42 U.S.C.A. § 9614(a).  "Certainly, CERCLA ... precludes a plaintiff from recovering cost [to repair the contaminated property] under both CERCLA and state law." Minyard Enterprises v. Southeastern Chemical & Solvent, 184 F.3d 373, 382 (4th Cir. 1999).  "Common law claims for restitution, indemnity, and contribution are in conflict with CERCLA's contribution scheme, wherein the court equitably apportions liability among the responsible parties." XDP, Inc. v. Watumull Properties, 2004 WL 1103023, *9 (D. Or. May 14, 2004).  Additionally, CERCLA expressly prohibits double recovery. 42 U.S.C. 9614(b).[5]  "However, CERCLA does not prevent a plaintiff from recovering damages under state law that are not duplicative of the damages it recovers under CERCLA." Minyard, 184 F.3d at 382-83.

A highly instructive analysis is found in the New Mexico[v. General Elec. Co., 322 F.Supp.2d 1237 (D.N.M.2004)] litigation. There, [...] the court described a continuum to illustrate when damage claims based on future remediation costs would be preempted by CERCLA. First, the court observed that where the plaintiff seeks damages only for injuries beyond the reach of CERCLA (e.g., petroleum contamination, which is specifically excluded from CERCLA), or for injuries beyond the scope of current remedial action, then there would be no conflict. See New Mexico, 335 F.Supp.2d at 1226-27. However, if the plaintiff seeks "to use state tort claims to recover ... damages from parties complying with an EPA order on the theory that the EPA's chosen remedy is somehow inadequate" there would be a conflict between state tort damages remedies and the CERCLA scheme. Id. at 1227. The court reasoned that allowing a suit for

---

[5] Section 9614(b) provides:
Any person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law. Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter.

22

> money damages based on the EPA's allegedly inadequate remedy selection could result in a responsible party being held liable for failing to employ a remedy that it was statutorily prevented from employing. See id.
>
> ...  The court reasoned that the defendants, as responsible parties, could not be held individually liable in damages for an alleged deficiency in the EPA's chosen remedy, given that the remedy was dynamic. See id. Nor could defendants be held liable in damages for conducting EPA-instigated and EPA-approved remedial action upon a claim that what the EPA asked defendants to do would not address the full extent of the problem. See id. Finally, the court observed that if the plaintiff believed that the existing remedial actions were lacking in some respect, then it could have raised its concerns with the EPA. See id.

City of Modesto Redevelopment Agency v. Dow Chemical Co., 2005 WL 1171998, *13

(Cal.Superior April 11, 2005).

Another case which is instructive is the Fourth Circuit's decision in Minyard Enterprises v. Southeastern Chemical & Solvent, 184 F.3d 373 (4th Cir. 1999).  The Minyard Court found that the plaintiff could recover under the state law theory of negligence for diminution in value of property. Id. at 383.  The court found that the negligence award did not constitute response costs and would not result in double recovery because the plaintiff no longer owned the property and would not benefit from restoration of the property under CERCLA. Id. at 383-84. Plaintiffs' claims seek three types of damages: compensatory, injunctive relief - in the form of containment or cleanup, and punitive damages.

### i. Compensatory and injunctive relief

Claims Four through Eight of plaintiffs' complaint assert state law claims alleging that plaintiffs were damaged in that hazardous substances exist on the property; that the State has spent money in the investigation of the hazardous substances, has incurred and will continue to incur response costs, and "has been otherwise injured and damaged." (Doc. 106, ¶¶ 60, 63, 66, 69, 72).  The court notes that in the instant case plaintiffs own the property at issue and would

benefit from restoration of the property.  The court finds that these claims seek response costs or repair of the property contaminated with hazardous substances covered by CERCLA and are, therefore, preempted by CERCLA to that extent.

Claim Nine alleges "harm and the threat of harm to the State and the environment of the State." (Doc. 106 ¶ 74).  The remedy for this claim is also the remediation of the property.

Lastly, claims Ten and Eleven assert claims for trespass and nuisance.  Some courts have found such claims to be preempted by CERCLA. See e.g. XDP, 2004 WL 1103023, at *9; see also Feikema v. Texaco, Inc.,16 F.3d 1408 (4th Cir.1994) (holding that EPA's consent order under section 7003 preempts state law trespass and nuisance actions).  Plaintiffs' trespass claim seeks money damages for the continuing release of hazardous substances onto the property. Plaintiffs' nuisance claim requests that defendants "abate and completely and permanently prevent migration and threat of migration of hazardous substances into the environment at, in, and around the property."  The court finds that remediation of the property will compensate plaintiffs for these alleged harms.  To award plaintiffs compensatory money damages for improvement or cleanup of the property or to order containment and cleanup of the hazardous substances would provide the same or double recovery provided under CERCLA.

### ii. Punitive damages

However, plaintiffs seek more than compensatory damages and cleanup in their state law claims.  Plaintiffs' state law claims Four through Ten seek punitive damages.[6]   CERCLA

---

[6] Claim Eleven does not seek any money damages but instead seeks containment or cleanup - a remedy which this court found above was preempted by CERCLA.

imposes punitive damages under certain circumstances.[7]  However, as discussed above,

CERCLA expressly allows states to impose additional liability or requirements.  Thus, punitive

damages are recoverable to the extent they are not duplicative of those provided under

CERCLA.

### 5. Failure to state a claim upon which relief can be granted

The court has limited plaintiffs' state law claims to punitive damages sought under claims

Four through Ten.[8]  Defendants contend that these state law claims are due to be dismissed

because (1) the fraud claims were not pled with particularity, (2) the concealment claims fail

because plaintiffs have failed to allege a duty to disclose, (3) the concealment claims fail because

defendants cannot be liable for concealment of facts they should have known, (4) the Eighth

Claim for relief is duplicative of the other claims, (5) there can be no abnormally dangerous

activity claim between present and former landowners, (6) former owners cannot trespass upon

land which they owned at the time of the alleged trespass, (7) plaintiffs' strict liability and

trespass claims are barred by the statute of limitations, and (8) plaintiffs' strict liability and

trespass claims are barred by the doctrine of caveat emptor.

---

[7] CERCLA establishes various penalties, including punitive damages, in the event of noncompliance with a unilateral administrative order by a PRP.  Under § 106(b), the district court may, in the absence of "sufficient cause," impose daily fines of up to $27,500 for a willful violation, refusal, or failure to comply with a UAO. 42 U.S.C. § 9606(b)(1); 40 C.F.R. § 19.4.  In addition, under § 107(c)(3), the court may impose punitive damages "in an amount at least equal to, and not more than three times, the amount of any costs incurred by the Fund as a result of such failure to take proper action." 42 U.S.C. § 9607(c)(3).

[8] The Eleventh Claim for relief, alleging "negligence and a continuing public nuisance," did not seek compensatory or punitive damages, but instead sought containment and cleanup of the hazardous substances - a relief which the court found above was preempted by CERCLA.

### a. Particularity

Defendants contend that plaintiffs' fraud claims are not pled with particularity. Defendant Illinois Central objects to the lack of particularity as to when the alleged fraud in the Fourth Claim for relief occurred.

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

FED. R. CIV. P. 9(b).  The particularity rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir.1997) (internal quotations omitted) (quoting Durham v. Bus. Management Assocs., 847 F.2d 1505, 1511 (11th Cir.1988).  "The application of Rule 9(b), however, must not abrogate the concept of notice pleading." Durham, 847 F.2d at 1511.

In the Fourth Claim for relief, paragraph 58 begins by stating "[o]n or before September 10, 1976, ..."   Defendants contend that such a statement is inadequate because it does not even state "a general time period" and "covers from the beginning of the universe through September 1976."  However, paragraph 58 of the complaint only uses the date as a general reference to when the parties entered into negotiations concerning the purchase of the property.  The complaint alleges that defendants made certain representations during those negotiations.  It is not necessary that plaintiffs allege an exact date so long as there is no confusion as to which negotiations plaintiffs refer.  There is no apparent confusion as to what negotiations plaintiffs refer and defendants are presumably in as good a position as are plaintiffs to determine the time

period over which the negotiations occurred.  The court finds the allegations are not so ambiguous or confusing that the fraud claims should be dismissed.  It is clear from the complaint that the alleged misrepresentations occurred during the negotiations over the December 1976 sale of the property to the State of Alabama.  The alleged representations would have occurred prior to the entry of the parties into a sales agreement - presumably  September 10, 1976 - the date stated in the complaint.

Illinois Central also objects to the lack of specificity as to the nature of the alleged representations.  The Fourth Claim for relief alleges that specified  representations "were made by the Defendant, Illinois Central, or were implicit in the aforementioned negotiations." (Doc. 106, ¶ 58).   Although plaintiffs have not alleged precisely how the specified representations were communicated to plaintiffs, the court again finds the allegations are not so ambiguous or confusing that the claim should be dismissed.  While the circumstances of fraud must be alleged with specificity, absolute particularity is not required, especially when some matters are beyond the knowledge of the pleader and can only be developed through discovery.  The complaint clearly alleges that plaintiffs were injured by Illinois Central's misrepresentation of seven listed material facts about the property it sold to the State of Alabama in December 1976.

### b. Duty to disclose

Illinois Central contends that plaintiffs' Fifth and Seventh Claims for relief, for fraudulent suppression and concealment, should be dismissed because they fail to allege facts showing that defendants had a duty to disclose.  Both plaintiffs and defendants cite as support Military Ins. Specialists, Inc. v. Life Ins. Co. of Ga., 810 So.2d 732 (Ala.Civ.App.,1999).  That case stated the following:

A duty to disclose may arise from a confidential relationship of the parties or from the particular circumstances of the case. § 6-5-102, Ala.Code 1975; [State Farm Fire and Cas. Co. v. Owen, 729 So.2d 834, 838 (Ala.,1998).]  Further, a duty to disclose a certain fact may arise from a request for information; however, mere silence in the absence of a duty to disclose is not fraudulent. Jewell v. Seaboard Industrial, Inc., 667 So.2d 653 (Ala.1995); Bulger v. State Farm Mutual Automobile Ins. Co., 658 So.2d 425 (Ala.1995). The existence of a duty to disclose is a question of law to be decided by the trial court. Owen, 729 So.2d at 839. In Owen, our supreme court discussed the function of the trial court in determining whether a party has a duty to disclose:

> "The [trial court] should decide whether, assuming as truth all of the plaintiff's factual assertions, they are sufficient to give rise to a legal duty. If, even presuming that all of the plaintiff's facts are true, the [trial court] determines that, as a matter of law, no duty was owed, then a summary judgment or a directed verdict is appropriate."

Id., at 840. Factors to be considered in determining whether a defendant had a duty to disclose include (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact suppressed; (4) the plaintiff's opportunity to discover the fact; (5) the customs of the particular trade; and (6) other relevant circumstances. Id.

Military Ins. Specialists, 810 So.2d at 738.  Plaintiffs' Fifth and Seventh Claims for relief

include the following allegations:

> 62. ... There arose an obligation and duty on the part of Illinois Central to communicate this material fact to the State because of the relationship between the parties or because of the particular circumstances of the case which were that the parties had an inequality of knowledge and condition as to the conditions existing upon the property.  The inequality of condition was that the State did not know of the existence of hazardous substances at, in, and about said property whereas the Illinois Central had actual knowledge of the condition of the said property.  Further, the Illinois Central not only knew of the serious and hazardous condition of the property but withheld and suppressed this information from the State.

> 68. ... The Defendant, Illinois Central, concealed such facts from the State as to deceive and mislead the State, although the State did make a reasonable inspection of the afore-said property, but said inspection failed to reveal the hazardous conditions existing upon said property.

(Doc. 106, ¶¶ 62, 68).  Plaintiffs have alleged that Illinois Central had a duty to disclose and

have specified the facts which they allege gave rise to the duty - the relationship of the parties and defendant's superior knowledge.  The court finds such allegations to be sufficient to survive a motion to dismiss.  The complaint indicates that although plaintiffs had the opportunity to inspect and did in fact conduct an inspection of the property, the hazardous conditions were not discoverable upon their reasonable inspection.  The court will not weigh the facts at this stage in the litigation.  As previously stated, the scope of review is limited to the four corners of the complaint and the court must take all the allegations in the complaint as true and view them in the light most favorable to the plaintiffs.  Given this standard of review, the court finds the allegations of duty to be sufficient.

### c. Concealment of facts defendant "should have known"

Claims Five and Seven allege that Illinois Central concealed or suppressed facts which it "knew or should have known." (Doc. 106, ¶¶ 62, 68).  Illinois Central correctly argues that it can only be liable for concealing facts of which one has knowledge. Morris v. Merritt Oil Co., 686 So.2d 1139, 1145 (Ala.1996) (citations omitted).   However, Claim Five also alleges that "Illinois Central had actual knowledge of the condition of said property" and "knew of the serious and hazardous condition of the property" (Doc. 106, ¶ 62).  Claim Seven also states that Illinois Central "concealed such facts from the State as to deceive and mislead the State." (Doc. 106, ¶ 68).  To conceal so as to deceive and mislead necessarily implies knowledge of the facts. Thus, although plaintiffs have used the phrase "knew or should have known," they have alleged actual knowledge.  To the extent plaintiffs claim concealment or suppression of facts of which defendants did not have actual knowledge, those claims are due to be dismissed.

29

### d. Status of Claim Eight as a duplicate

Claim Eight alleges that Illinois Central had knowledge of and approved of creosoting operations conducted on the property which constituted abnormally dangerous activity.  Claim Eight next alleges in the alternative that Illinois Central willfully deceived, suppressed, misrepresented, deceived, and/or misled the State during the negotiations of the purchase of the property. (Doc. 106, ¶ 72).  Such allegations appear to be duplicative of the Ninth Claim for relief and the previously discussed fraud claims.[9]  Accordingly, the court finds that the Eighth Claim for relief should not be allowed as a separate claim.

### e. Abnormally dangerous activity of former landowner

Plaintiffs' Ninth Claim for relief alleges defendants are liable for the harm caused and threatened to be caused by the creosoting operations conducted on the property because they constituted an abnormally dangerous activity. (Doc. 106, ¶¶ 74, 75).  "[L]iability for an abnormally dangerous activity arises out of the intrinsic danger of the ultrahazardous activity itself and the risk of harm it creates to those in the vicinity." Harper v. Regency Development Co., Inc., 399 So.2d 248, 252 (Ala. 1981) (citing  Restatement (Second) of Torts § 519 (1977)). "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Id. at 252 (quoting Restatement (Second) of Torts § 519 (1977)).  There is a split of authority as to whether liability for abnormally dangerous activity extends to successors-in-title.  Plaintiffs cite four cases that have found no distinction between

---

[9] Claim Nine alleges abnormally dangerous activity against Illinois Central as well as defendants, Reilly Tar, Alabama Wood and Illinois Central.

the rights of a successor in title to recover for abnormally dangerous activity and the right of a neighboring property owner. Allied Corp. v. Frola, 730 F.Supp. 626 (D.N.J. 1990); Hanlin Group v. International Minerals & Chem. Corp., 759 F.Supp. 925 (D. Me. 1990); Amland Props. Corp. v. Aluminum Co. of Am., 711 F.Supp. 784 (D.N.J. 1989). T & E Industries, Inc. v. Safety Light Corp., 227 N.J.Super. 228, 546 A.2d 570 (N.J.Super.A.D. 1988). However, the majority of courts hold that under the language of the Restatement (Second) of Torts, there can be no cause of action in strict liability against predecessor landowners. See e.g. Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 625 -626 (M.D.Pa. 1997) ("... New Jersey and Maine appear to be alone, or at least among a very few jurisdictions, in recognizing a cause of action in strict liability assertable by subsequent owners. ... However, the courts rejecting application of the doctrine looked to the language of section 519 and to its origins in English common law.") see also Kennedy Building Assoc. v. Viacom, Inc., 375 F.3d 731, 739 (8th Cir. 2004) ("The majority of courts that have considered this question have agreed that strict liability should not be extended to cover claims by a subsequent owner of the land against an earlier owner." citing Rosenblatt v. Exxon Co., 335 Md. 58, 642 A.2d 180, 185-88 (1994); Hicks v. Humble Oil & Refining Co., 970 S.W.2d 90, 97 (Tex.Civ.App.1998); Hydro-Mfg., Inc. v. Kayser-Roth Corp., 640 A.2d 950, 958 (R.I.1994); Futura Realty v. Lone Star Bldg. Ctrs., 578 So.2d 363, 365 (Fla.Dist.Ct.App.1991); Andritz Sprout-Bauer, supra; Cross Oil Co. v. Phillips Petroleum Co., 944 F.Supp. 787, 789-90 (E.D.Mo.1996); 325-343 E. 56th St. Corp. v. Mobil Oil Corp., 906 F.Supp. 669, 677-78 (D.D.C.1995); Dartron Corp. v. Uniroyal Chem. Co., 893 F.Supp. 730, 740 (N.D.Ohio.1995); 55 Motor Ave. Co. v. Liberty Indus. Finishing Corp., 885 F.Supp. 410, 423 (E.D.N.Y.1994); Wellesley Hills Realty Trust v. Mobil Oil Corp., 747 F.Supp. 93, 101-02

(D.Mass.1990) (buyer knew of contamination at time of land sale); see also City of Minneapolis v. Arkla, Inc., No. 4-91-CV-44, 1993 WL 61827, at * 2 (D.Minn.1993) (unpublished) (Under Minnesota law, claim for strict liability for ultrahazardous activities is "available only to adjoining or neighboring landowners.")).   As the Middle District of Pennsylvania explained:

> Section 519 imposes liability on one engaging in an abnormally dangerous activity "for harm to the person, land, or chattels of another." (emphasis added). See Wellesley Hills Realty Trust [ v. Mobil Oil Corp.], 747 F.Supp. [93, 102 (D.Mass.1990) ] ... [Other citation omitted.] ... The doctrine applies, therefore, to claims by an occupier of land harmed by an activity abnormally dangerous in relation to the area, which is carried on by a contemporaneous occupier of neighboring land. Rosenblatt, 642 A.2d at 186. The plaintiffs' claims call for an expansion of this doctrine to claims by subsequent occupants of the land on which the activity took place. See id. If Texaco's disposal of oil sediment and other wastes in earthen pits on the land constituted an abnormally dangerous activity, it engaged in the offensive activity at the time it owned the property. Thus, if Texaco caused harm to the property, it was to land it owned, not to the "land of another." Such activity falls outside the scope of § 519.
>
> * * * *
>
> That analysis is, we are persuaded, the proper one. It is plain from the language of section 519 and the common law principles from which it derives that it was not intended to extend to successors-in-title.

Andritz Sprout-Bauer, 174 F.R.D. at 624-626 (quoting Jones v. Texaco, 945 F.Supp.1037  (S.D. Tex. 1996)).   This court is persuaded by the reasoning of the majority courts and concludes that liability for abnormally dangerous activity should not be extended to cover claims by a subsequent owner of the property against a previous owner.   However, the sale of property to the State was subject to a lease of a portion of the property to defendant, Alabama Wood Treating Corporation, Inc. and creosoting operations allegedly continued to be conducted on the leased property until the State terminated the lease on April 30, 1985. (Doc. 106, ¶¶ 13 -15, 19). The lease was allegedly assigned to the State by a separate agreement between Illinois Central and the State, dated December 23, 1976. (Doc. 106, ¶ 14).  Thus, it is possible plaintiffs could

prove facts which would entitle them to relief for abnormally dangerous activity against the defendants who continued creosoting operations after the sale of the property to the State. Plaintiffs further allege that the creosoting operations were "conducted by both Reilly Tar and Alabama Wood for, in part, the benefit of Illinois Central and its predecessor the GM&O Railroad." (Doc. 106, ¶ 23).  Plaintiffs cite case law which held landowners responsible for the activities of their tenants even though the landowners did not actively participate in the alleged tortious conduct. See State, Dept. of Environmental Protection v. Ventron Corp., 94 N.J. 473, 488, 468 A.2d 150, 157 (N.J.,1983) ("[T]he law of liability has evolved so that a landowner is strictly liable to others for harm caused by toxic wastes that are stored on his property and flow onto the property of others. ... [T]hose who use, or permit others to use, land for the conduct of abnormally dangerous activities are strictly liable for resultant damages."); State of N.Y. v. Monarch Chems., Inc., 456 N.Y.S.2d 867, 868 (App. Div. 1982) ("[T]he legal concepts governing a landlord's liability for its tenant's activities have been expanded to the point that a landlord may now be held responsible for negligence in the selection of a tenant and also for the wrongdoing of the tenant when the landlord continues to exercise control over the premises. Furthermore, a landowner is required to maintain his property in a reasonably safe condition in view of all the circumstances."  citations omitted).  However, in this case, the State was the landowner/landlord at the time in question - not Illinois Central.  The tortious conduct is merely alleged to have been conducted in part for the benefit of Illinois Central.  Presumably the alleged benefit to Illinois Central ceased upon the sale of the property.  The court notes that the complaint specifically alleges that Illinois Central is liable for "the acts, omissions, and consequences thereof attributable to GM&O Railroad", but makes no similar allegation of

association with any other defendants. (Doc. 106, ¶ 7(b)).  GM&O Railroad is alleged to be the

predecessor to Illinois Central. (Doc. 106, ¶ 9).  The court also notes that plaintiffs do not allege

that Illinois Central exercised any control over the leased property after the State purchased the

land.  As such, the court finds that plaintiffs' Ninth claim for relief is due to be dismissed against

Illinois Central since plaintiffs have alleged no tortious conduct by Illinois Central

contemporaneous with the State's ownership of the property.

### f. Trespass by owner

Plaintiffs' Tenth Claim for relief alleges that defendants' disposal of hazardous

substances caused a continuing release of hazardous substances which constitutes a trespass.

Illinois Central argues that a current landowner cannot hold a former landowner liable for its

action on the property it owned at the time.  The basis for trespass at common law is the direct,

physical interference with the person or property of another. Andritz Sprout-Bauer, 174 F.R.D. at

627.  Plaintiffs had no property interest in the land prior to the State's purchase of the property

on December 23, 1976.   Plaintiffs cannot recover for trespass unless the alleged tortious acts

were committed contemporaneously with plaintiffs' ownership of the property. See id.

However, as stated above with regard to plaintiffs' abnormally dangerous activity claim,

creosoting operations allegedly continued to be conducted after the sale of the property pursuant

to a lease that was not terminated until April 30, 1985. (Doc. 106, ¶¶ 13 -15, 19).  Thus, it is

possible plaintiffs could  prove facts which would entitle them to relief for abnormally dangerous

activity against defendants who are not simply predecessors in ownership.  Plaintiffs further

allege that "the disposal of hazardous substances by Reilly Tar and Alabama Wood [was] for, in

part, the benefit of Illinois Central." (Doc. 106, ¶ 78).  However, as discussed above, any benefit

to Illinois Central presumably ceased upon the sale of the property to the State.   As such, the

court finds that plaintiffs' Tenth Claim for relief is due to be dismissed against Illinois Central

since plaintiffs have alleged no tortious conduct by Illinois Central contemporaneous with the

State's ownership of the property.

### g. Statute of Limitations

Illinois Central contends that plaintiffs' claims for public nuisance, strict liability, and

trespass are time barred because any legal injury plaintiffs suffered began the day plaintiffs

purchased the property.   The court found above that such claims are due to be dismissed against

Illinois Central for other reasons.   However, the court has not yet determined that plaintiffs'

claims for strict liability (abnormally dangerous activity) and trespass should be dismissed

against Reilly or other defendants.  While only Illinois Central has raised this issue, the court

notes that an action generally does not accrue until discovery of the first actionable injury."

Rumford v. Valley Pest Control, Inc., 629 So.2d 623, 627 (Ala.1993) (citation omitted).  Illinois

Central correctly argued that the cause of action accrues when the legal injury occurs whether or

not the full amount of damages is apparent at the time of the first legal injury.  As the Supreme

Court of Alabama explained:

> The statute of limitations on a claim begins to run when the cause of action
> accrues. Home Ins. Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 285 So.2d 468
> (1973). A cause of action accrues as soon as the claimant is entitled to maintain
> an action, regardless of whether the full amount of the damage is apparent at the
> time of the first legal injury. Smith v. Medtronic, Inc., supra; Garrett v. Raytheon
> Co., 368 So.2d 516, 518-19 (Ala.1979). In Kelley v. Shropshire, 199 Ala. 602,
> 604-05, 75 So. 291, 292 (1917), the rule was stated as follows:
>
>> " 'If the act of which the injury is the natural sequence is of itself a
>> legal injury to plaintiff, a completed wrong, the cause of action
>> accrues and the statute begins to run from the time the act is
>> committed, be the actual damage [then apparent] however slight,

35

> and the statute will operate to bar a recovery not only for the
> present damages but for damages developing subsequently and not
> actionable at the time of the wrong done; for in such a case the
> subsequent increase in the damages resulting gives no new cause
> of action. Nor does plaintiff's ignorance of the tort or injury, at
> least if there is no fraudulent concealment by defendant, postpone
> the running of the statute until the tort or injury is discovered.' "

(Emphasis added.)

Chandiwala v. Pate Const. Co., 889 So.2d 540, 543 (Ala. 2004).  Plaintiffs appear to contend that

no damage was apparent until sometime after the State purchased the property.[10]  Plaintiffs argue

that it does not appear from the face of the complaint that the claims are time-barred. (Doc. 205,

p. 26 citing Quiller v. Barclays American/Credit, Inc.,727 F.2d 1067, 1069 (11th Cir. 1984)

("Generally, the existence of an affirmative defense will not support a motion to dismiss.

Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations

indicate the existence of an affirmative defense, so long as the defense clearly appears on the

face of the complaint.")).  As stated above, no defendant against whom these claims remain

pending has even argued that the claims are time-barred.  Accordingly, the court will not dismiss

them on this basis.

### h. caveat emptor

Reilly contends that caveat emptor applies to bar the state law claims of strict liability

(abnormally dangerous activity), nuisance, and trespass.  "Under Alabama law the rule of caveat

emptor applies to the purchase of a piece of real property. Martin v. Southern Real Estate, Inc.,

1999 U.S. Dist. LEXIS 10008, *16 (S.D. Ala. June 15, 1999) (citing Morris v. Strickling, 579

---

[10] In fact, the court found above that plaintiffs had no viable claims until the State
purchased the property and the alleged tortious conduct was contemporaneous with the State's
ownership of the property.

So. 2d 609, 610-611 (Ala. 1991) (declining to differentiate between improved and unimproved real property).  However, there is an exception to the application of caveat emptor where "the agent (whether of the buyer or of the seller) has knowledge of a material defect or condition that affects health or safety and the defect is not known to or readily observable by the buyer[.]" Redwing Carriers, Inc. v. Saraland Apartments, Ltd., 875 F.Supp. 1545 , 1570 (S.D. Ala. 1995) aff'd in part, rev'd in part on other grounds, 94 F.3d 1489 (11th Cir. 1996) (citing Fennell Realty Co. v. Martin, 529 So.2d 1003, 1005 (Ala.1988)).   Under such circumstances, "the agent and the seller must disclose the defect; they are liable for damages which nondisclosure causes. Id. at 1570-71 (citing Fennell Realty, 529 So.2d at 1005).   Moreover, the court found above that only the tortious conduct that occurred after the State purchased the property could give rise to an actionable claim.  It is unclear how caveat emptor could apply to claims that arose after the sale of the property.

## CONCLUSION

For the reasons stated above,

1) defendant's motion to strike (Doc. 217) is **DENIED;**

**2)** defendants' amended motions to dismiss (Doc. 177 & 180) are **GRANTED IN PART** to the extent that the following claims are **DISMISSED**:
    a) plaintiffs' natural resource claim under § 107(f),
    b) plaintiffs' claim under 42 U.S.C. § 6973 (to the extent such a claim was asserted),
    c) plaintiffs' state law claims (Claims Four through Eleven) to the extent they seek     compensatory damages and/or containment and cleanup,
    d) plaintiffs' claims for concealment and/or suppression (Claims Five & Six) to the extent they seek to recover for concealment and/or suppression of facts of which defendants did not have actual knowledge,
e) plaintiffs' Eighth Claim for relief (as duplicative),
f) plaintiffs' claim for abnormally dangerous activity against Illinois Central, and
g) plaintiffs' claim for trespass against Illinois Central.

Defendants' amended motions to dismiss are **DENIED** in all other respects.

It is **FURTHER ORDERED** that plaintiffs are granted leave to amend their complaint to allege proper damages under § 107(f), if they exist, in accordance with this Order.  If plaintiffs choose to amend their complaint, they must do so **on or before June 16, 2006,** and the complaint should be filed in complete form, without incorporating or referencing previous documents, so that the entire newly-amended complaint will be contained in one document.

**DONE and ORDERED** this 6th day of June, 2006.

/s/ Callie V. S. Granade
**CHIEF UNITED STATES DISTRICT JUDGE**