IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STATE OF ALABAMA and ALABAMA STATE DOCKS DEPARTMENT, | * | |
| | * | |
| Plaintiffs, | | |
| | * | CIVIL ACTION NO. 85-0642-C |
| v. | * | |
| | * | |
| ALABAMA WOOD TREATING CORPORATION, INC., REILLY TAR & CHEMICAL CORPORATION, and ILLINOIS CENTRAL GULF RAILROAD COMPANY, THOMAS J. KNOX, and KENNETH HAGLER, | * | |
| | * | |
| | * | |
| | * | |
| Defendants. | | |
| | * | |

FOURTH AMENDED COMPLAINT

COME NOW the State of Alabama and the Alabama State Docks Department and amend

their Complaint as filed with this Court as follows:

NATURE OF CLAIM

1.      This is a civil action pursuant to Section 107 of the Comprehensive Environmental

Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607, for recovery

of response costs which have been and are scheduled to be incurred by Plaintiffs to abate a release

and/or threatened release of hazardous substances, and for damage to natural resources at property

located at the East End of Virginia Street in Mobile, Alabama.  This is also an action under Section

7002(a)(1)(A)(B) and 7003(a) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C.

§S6972(a)(1)(A)(B) and 6973(a), for injunctive relief requiring Defendants to take such action, as specified herein and as may otherwise be necessary, in order to remove the possibility of imminent and substantial endangerment to health and the environment.  This is also an action for declaratory judgment pursuant to 28 U.S.C. SS2201, 2202, and an action for recovery of damages for pursuant to state remedies for trespass, nuisance, failure to fully disclose, suppression, deceit, conducting abnormally dangerous activities and related actions.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28, U.S.C. §1331(a) and 42 U.S.C. §§9607, 9613 and 6972.  The Court's jurisdiction over claims arising under State law is based on the doctrine of pendent jurisdiction in that such claims arise out of they"same common nucleus of operative facts as do the federal claims.

3.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (c), 42 U.S.C. §9613(b) and 42 U.S.C. §6972(a)(2) because the claims arose in this district and because the Defendants do or did business within this district at times relevant hereto, and because endangerment to health or the environment may occur in this district.

## PARTIES

4.     The State of Alabama is a sovereign State of the United States of America and the Alabama State Docks is a department and agency of the State of Alabama (hereinafter both will collectively be referred to as "the State").

5.     (a)  Defendant Reilly Tar & Chemical Corporation ("Reilly Tar") is an Indiana corporation which did business within the jurisdiction of the Court at times relevant hereto.  Reilly

2

Tar's principal place of business is Indianapolis, Indiana.

      (b)   Until on or about January 1, 1961, Reilly Tar operated under the name of Republic Creosoting Company.  As pertains herein, Reilly Tar is liable for its own acts, omissions, and consequences thereof and also the acts, omissions, and consequences thereof attributable to the Republic Creosoting Company.

      6.     (a)   Defendant Alabama Wood Treating Corporation ("Alabama Wood") is a corporation doing business within the jurisdiction of the court.  Its principal place of business is Mobile, Alabama.

      (b) (1)  Defendant Thomas J. Knox ("Knox") is the owner of Alabama Wood.  Knox is and/or was an owner or operator of a facility at a time when hazardous substances were disposed of, as those terms are used in Section 107(a)(2) of CERCLA.

      (2)  Knox arranged for the disposal hazardous substances, as that term is used in Section 107(a)(3) of CERCLA.

      (c) (1)  Defendant Ken Hagler ("Hagler") is the chief operating officer and/or manager of Alabama Wood.  Hagler is and/or was an owner or operator of a facility at a time when hazardous substances were disposed of, as those terms are used in Section 107(a)(2) of CERCLA.

      (2)  Hagler arranged for the disposal of hazardous substances, as that term is used in Section 107(a)(3) of CERCLA.

      7.     (a)   Defendant Illinois Central Gulf Railroad Company ("Illinois Central") is a Delaware corporation doing business within the jurisdiction of the Court.  Illinois Central's principal place of business is Chicago, Illinois and it maintains a branch office and does business in Mobile,

3

Alabama.

(b) In 1971, Illinois Central acquired the assets of the Gulf, Mobile and Ohio Railroad Company ("GM&O Railroad"), a corporation doing business within the State of Alabama.  As pertains herein, Illinois Central is liable for its own acts, omissions and consequences thereof and also the acts, omissions, and consequences thereof attributable to GM&O Railroad.

<u>HISTORY OF SITE</u>

8.     Creosoting operations have been conducted at the property located at the East End of Virginia Street in Mobile, Alabama for at least seventy-five years.  The creosoting operations have included the treatment or processing of wood blocks, ties, lumber, poles and other forest products with creosote and other wood preservative materials.

9.     On or about April 1, 1954, GM&O Railroad, the predecessor to Illinois Central and the owner of the property at the East End of Virginia Street in Mobile, Alabama, leased that property to Republic Creosoting company for a term of ten years for the purpose of conducting the creosoting operations described in paragraph 8.

10.     On or about June 2, 1961, GM&O Railroad and Reilly Tar (the new name of Republic Creosoting Company) extended the lease for an additional five years beyond the ten year term described in paragraph 9.  In 1969 the 1954 lease agreement with GM&O Railroad was extended until March 31, 1974.

11.     Before April 1, 1972, Reilly Tar sold its equipment and inventory on the property located at the East End of Virginia Street in Mobile, Alabama to Alabama Wood.

12.     On April 1, 1972, the GM&O Railroad entered into a lease agreement with Alabama Wood for a term of ten years, to expire on March 31, 1982.  Alabama wood leased the property for

4

the purpose of conducting the creosoting operations described in paragraph 8.

13.     On December 23, 1976, Illinois Central (the successor owner of GM&O Railroad) sold and conveyed to the State 145 acres of land at Choctaw Point known as the Frascati Yard. The transferred property included the approximately 14 acres of property at the East End of Virginia Street on which Reilly Tar and Alabama Wood conducted creosoting operations.

14.     The sale described in paragraph 13 was subject to the 1972 lease agreement between the GM&O Railroad and Alabama Wood, which was assigned to the State by a separate agreement between Illinois Central and the State dated December 23, 1976.

15.     The lease agreement referred to in paragraphs 9 and 10 authorized the Lessee, Republic Creosoting, and subsequently Reilly Tar, to use the Lessor's slip and pier "for the purpose of discharging and loading out in tank steamers, and/or barges, creosote oil, road tar, coal tar, or similar products." The lease agreement required the Lessee to "comply with all state, municipal, or other governmental regulations, if any, that may from time to time be legally in effect or promulgated, controlling or affecting the conduct of business of the kind in which the Lessee may be engaged or the handling of commodities of the kind the Lessee may handle over said pier."

16.     The lease agreement referred to in paragraph 12 and 14 requires the Lessee, Alabama Wood, to "comply with all lawful federal, state, or municipal statutes, ordinances or regulations applicable to its activities upon the leased premises." The lease agreement further provides that should the Lessee; Alabama Wood, "breach or fail to perform at the time required any of Lessee's obligations hereunder and continue to default of remedy or performance for ten (10) days after demand therefor," the Lessor may cancel the lease agreement and repossess the premises.

17.     The lease agreement referred to in paragraphs 12 and 14 provides that "[w]ithin sixty

5

(60) days after termination of the lease, whether by expiration of the term or by election of either party, the Lessee shall remove any structures or installations placed upon the leased premises by it, and any structures or installations placed upon the leased premises by any former Lessee of the Railroad when the present Lessee has taken title to or made use of such structures or installations, and shall restore the premises to its original condition."

18.     Upon expiration of the primary term of the lease agreement referred to in paragraph 14, Alabama Wood continued to occupy the property at the East End of Virginia Street in Mobile, Alabama on a month-to-month basis subject to the terms and conditions of the lease agreement referred to in paragraphs 12 and 14.

19.     On April 30, 1985, the State terminated the lease agreement with Alabama Wood that is referred to in paragraphs 12 and 14 and demanded that the Lessee cease immediately any activities or operations that would result in any further contamination of the environment at, in, and around the leased premises.

20.     Both Reilly Tar and Alabama Wood used the property at the East End of Virginia Street in Mobile, Alabama for creosoting operations.

21.     Illinois Central (and its predecessor the GM&O Railroad) owned the property at the East End of Virginia Street in Mobile, Alabama while creosoting operations were conducted by Reilly Tar and Alabama Wood.

## CONTAMINATION AND RESPONSE

22.     Upon information, knowledge and belief of the State, a significant area of the property at the East End of Virginia Street in Mobile, Alabama which was previously owned by Illinois Central and on which both Reilly Tar and Alabama Wood conducted creosoting operations is

contaminated with creosote and other pollutants and contaminants.

23.     On information, knowledge and belief, the contamination referred to in paragraph 22 is the result of operations and activities conducted by both Reilly Tar and Alabama Wood for, in part, the benefit of Illinois Central and its predecessor the GM&O Railroad.

24.     Hazardous substances, including creosote, have been released, continue to be released, and there is a substantial threat of further releases into the environment at, in, and around the property located at the East End of Virginia Street in Mobile, Alabama.

25.     In response to the releases and threatened releases of hazardous substances, the State has been caused to conduct an investigation of the contamination, releases and threatened releases.

26.     The State has incurred and will continue to incur response costs to the release and threatened release of hazardous substances into the environment at, in and around the property located at the East End of Virginia Street in Mobile, Alabama.

27.     The State does hereby demand that Defendants commit within sixty (60) days from the date of service of this Complaint to undertake the cleanup of the property located at the East End of Virginia Street in Mobile, Alabama in a manner not inconsistent with the National Contingency Plan.

28.     (a)  The State has not made a claim against the Fund - nor does the State intend to make a claim against the Fund - under Section 112 of CERCLA, 42 U.S.C. § 9612, for any damages to natural resources or for any of its response costs.

(b)  To the extent notice under Section 112(a) of CERCLA, 42 U.S.C. § 9612(a), is required, Defendants have been provided sufficient notice under the statute for this action against them to be maintained.

## FIRST CLAIM FOR RELIEF

29.     The Plaintiffs adopt and reallege paragraphs 1 through 28 as fully as if set out herein.

30.     Section 107(a) of CERCLA, 42 U.S.C. §9607(a), provides in pertinent part as follows:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –

(1) the owner and operator of a . . . facility,

(2) any person who at the time of disposal of any hazardous substances owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport of disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –

(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

31.     Section 101(9) of CERCLA, 42 U.S.C. §9601(9), defines a "facility" as follows:

(A) any building, structure, installation, equipment, pipe, pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or

8

(B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

32.     The property at the East End of Virginia Street in Mobile, Alabama that has been leased by Reilly Tar and Alabama Wood and that was previously owned by Illinois Central constitutes one or more facilities within the meaning of Section 101(9) of CERCLA, 42 U.S.C. §9601(9).

33.     Creosote and other chemicals used and stored in Reilly Tar's and Alabama Wood's creosoting operations are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. §9601(14).

34.     At relevant times, creosote and other hazardous substances were disposed of at the property at the East End of Virginia Street in Mobile, Alabama.

35.     Reilly Tar is a person who at the time of disposal of hazardous substances operated a facility at which such hazardous substances were disposed of within the meaning of Section 107 of CERCLA, 42 U.S.C. §9607.

36.     Alabama Wood is a person who at a time of disposal of hazardous substances operated a facility at which such hazardous substances were disposed of within the meaning of Section 107 of CERCLA, 42 U.S.C. §9607.

37.     Illinois Central is a person who at a time of disposal of hazardous substances owned the facility at which such hazardous substances were disposed of within the meaning of Section 107 of CERCLA, 42 U.S.C. §9607.

38.     Knox and Hagler are persons who at a time of disposal of hazardous substances owned and/or operated the facility at which such hazardous substances were disposed of within the

meaning of Section 107 of CERCLA, 42 U.S.C. §9607.

39.     Knox and Hagler are persons who arranged for the disposal of hazardous substances within the meaning of Section 107 of CERCLA.

40.     There has been and continues to be a release and/or threat of release of hazardous substances into the environment at, in, and around the property located at the East End of Virginia Street in Mobile, Alabama within the meaning of Section 101(22) of CERCLA, 42 U.S.C. §9601(22).

41.     Reilly Tar, Alabama Wood, Illinois Central, Knox and Hagler are liable, jointly and severally, to the State under Section 107 of CERCLA, 42 U.S.C. §9607, for the cost of response, including the cost of removal and remedial actions, incurred and to be incurred in the future by the State to respond to the release or threatened release of hazardous substances into the environment at, in, and around the property located at the East End of Virginia Street in Mobile, Alabama.

42.     The costs incurred by the State and the costs to be incurred by the State have been and will be not inconsistent with the National Contingency Plan.

WHEREFORE the foregoing premises considered, Plaintiffs demand judgment as follows:

A       Against the Defendants, separately and severally, to reimburse Plaintiffs for response costs incurred by Plaintiffs at the property at the East End of Virginia Street in Mobile, Alabama, including the costs of investigation, which presently exceeds $10,000.00;

B.      As a declaratory judgment, declaring Defendants liable for the costs of any further response actions taken by Plaintiffs at the property at the East End of Virginia Street in Mobile, Alabama, plus interest;

C.      Against Defendants for the expenses of this cost recovery action and costs of

enforcement herein, including attorneys' fees;

D.     Against Defendants for any other costs incurred by Plaintiffs; and

E.     For such other, further and different relief to which said Plaintiffs may be entitled, the foregoing premises considered.

## SECOND CLAIM FOR RELIEF

43.    The Plaintiffs adopts and reallege, as fully as if set out herein, the allegations set forth in paragraphs 1-42 hereof.

44.    As a result of the releases and threatened releases of hazardous substances into the environment at, in, and around the property located at the East End of Virginia Street in Mobile, Alabama, natural resources, as defined in Section 101(16) of CERCLA, 42 U.S.C. §9601(16), on, over and under the property have been and continue to be injured, destroyed, and/or lost.

45.    Plaintiffs have incurred expenses on account of the injury to, destruction of, or loss of natural resources.  Plaintiffs have sustained damages for injury to, destruction of, or loss of natural resources.

46.    Reilly Tar, Alabama Wood, Knox, Hagler and Illinois Central are liable, jointly and severally, under Section 107 of CERCLA, 42 U.S.C. §9607, for damages for the injury to, destruction of and/or loss of such natural resources, including the reasonable costs of assessing such injury, destruction and loss.

WHEREFORE, the foregoing premises considered, Plaintiffs demand judgment:

A.     Against Defendants for damages for injury, destruction, and loss of natural resources, including the reasonable costs of assessing such injury, destruction or loss;

B.     Against Defendants for the expenses of this damage recovery action, including

attorneys' fees;

C.     Against Defendants for any other costs incurred by Plaintiffs; and

D.     For such other, further and different relief to which said Plaintiffs may be entitled,

the foregoing premises considered.

<u>THIRD CLAIM FOR RELIEF</u>

47.     The Plaintiffs adopt and reallege, as fully as if set out herein, the allegations set forth

in paragraphs 1 through 46 hereof.

48.     Section 7002 of RCRA, 42 U.S.C. § 6972, provides in pertinent part as follows:

(a) In General - Except as provided in subsection (b) or (c) of this section, any person
may commence a civil action on his own behalf –

(l)(A) against any person (including (a) the United States and (b) any other
governmental instrumentality or agency, to the extent permitted by the eleventh
amendment to the Constitution) who is alleged to be in violation of any permit,
standard, regulation, condition, requirement, prohibition, or order which has become
effective pursuant to this Act; or

(B) against any person, including the United States and any other governmental
instrumentality or agency, to the extent permitted by the eleventh amendment to the
Constitution, and including any past or present generator, past or present transporter,
or past or present owner or operator of a treatment, storage, or disposal facility, who
has contributed or who is contributing to the past or present handling, storage,
treatment, transportation, or disposal of any solid or hazardous waste which may
present an imminent and substantial endangerment to health or the environment;...

Any action under paragraph (a)(1) of this subsection shall be brought in the district
court for the district in which the alleged violation occurred or the alleged
endangerment may occur.  The district court shall have jurisdiction, without regard
to the amount in controversy or the citizenship of the parties, to enforce the permit,
standard, regulation, condition, requirement, prohibition, or order, referred to in
paragraph (1)(A), to restrain any person who has contributed or who is contributing
to the past or present handling, storage, treatment, transportation, or disposal of any
solid or hazardous waste refer to in paragraph (1)(B), to order such person to
take-such other action as may be necessary, or both, or to order the Administrator to
perform the act or duty referred to in paragraph (2), as the case may be, and to apply

12

any appropriate civil penalties under section 3008(a) and (g).

49.    Section 7003 of RCRA, 42 U.S.C. §6973, provides in pertinent part as follows:

(a) Authority of Administrator - Notwithstanding any other provision of this Act, upon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court against any person (including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage or disposal facility) who has contributed or who is contributing to such handling, storage, treatment, transportation or disposal, to restrain such person from such handling, storage, treatment, transportation, or disposal, [or] to order such person to take such other action as may be necessary, or both.

50.    Section 1004(3) of RCRA, 42 U.S.C. S6908(3), provides:

The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any lands or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

51.    Section 1004 (33) of RCRA, 42 U.S.C. §6903(33), provides:

The term "storage," when used in connection with hazardous waste, means the containment of hazardous waste, either on a temporary basis or for a period of years, in such a manner as not to constitute disposal of such hazardous waste.

52.    "Storage" and/or "disposal" of solid and/or hazardous waste has occurred and/or is occurring at the property located at the East End of Virginia Street in Mobile, Alabama, as those terms are used in Section 1004 of RCRA, 42 U.S.C. §6903.

53.    Reilly Tar, a former operator at the property located at the East End of Virginia Street in Mobile, Alabama, has contributed to the past and present handling, storage, or disposal of solid and/or hazardous wastes at that property which may present an imminent and substantial endangerment to the health or the environment within the meaning of Section 7002 and 7003 of

13

RCRA, 42 U.S.C. §§6972 and 6973.

54.     Illinois Central, a former owner of the property located at the East End of Virginia Street in Mobile, Alabama, has contributed to the past and present handling, storage, or disposal of solid and/or hazardous wastes at that property which may present an imminent and substantial endangerment to health or the environment within the meaning of Sections 7002 and 7003 of RCRA, 42 U.S.C. §§6972, 6973.

55.     Alabama Wood, a past and/or present operator at the property located at the East End of Virginia Street in Mobile, Alabama, is contributing or has contributed to the past and present handling, storage, or disposal of solid and/or hazardous wastes at that property which may present an imminent and substantial endangerment to health or the environment within the meaning of Section 7002 and 7003 of RCRA, 42 U.S.C. §§6972, 6973.

56.     Knox and Hagler, past and/or present operators at the property located at the East End of Virginia Street in Mobile, Alabama, are contributing or have contributed to the past and present handling, storage, or disposal of solid and/or hazardous wastes at that property which may present an imminent and substantial endangerment to health or the environment within the meaning of Sections 7002 and 7003 of RCRA, 42 U.S.C. §§6972, 6973.

57.     Sections 7002(a)(2)(A) of RCRA, 42 U.S.C. §6972(a) - (2)(A) provides as follows:

No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to –

(i) the Administrator;

(ii) the State in which the alleged endangerment may occur;

(iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B), except that such

14

action may be brought immediately after such notification in the case of an
action under this section respecting a violation of subtitle C of this Act.

58.     On June 20, 1985, a copy of the Notice of Intent to file RCRA Complaint that was
filed with this Court was served on the Administrator of the Environmental Protection Agency and
to all the above-named Defendants in this action pursuant to the requirement of Section 7002 of
RCRA, 42 U.S.C. §6972.

WHEREFORE, the foregoing premises considered, Plaintiffs demand injunctive relief
requiring Defendants to take the following actions:

A.      To carry out a study, under the supervision and subject to the approval of the State
of Alabama, of the extent of the contamination, including contamination of ground and surface
waters and of the surrounding environment, of the property located at the East End of Virginia Street
in Mobile, Alabama, or, alternatively, to fund such a study;

B.      To develop and implement, under the supervision and subject to the approval of the
State of Alabama, a plan to prevent further contamination or, alternatively, to fund the development
and implementation of such a plan;

C.      To monitor, under the supervision and subject to the approval of the State of
Alabama, the area at the East End of Virginia Street, including the ground and surface waters and
surrounding environment, for further contamination, or alternatively, to fund such a monitoring
effort;

D.      To decontaminate or remove, under the supervision and subject to the approval of the
State of Alabama, all contaminated soil and other material at the site or, alternatively, to fund such
a removal effort;

E.      To restore, under the supervision and subject to the approval of the State of Alabama,

15

any contaminated ground and surface waters or, alternatively, to fund such a restoration effort; and

      F.     To take whatever other action this Court deems appropriate.

## FOURTH CLAIM FOR RELIEF

59.     The Plaintiffs adopt and reallege, as fully as if set out herein, the allegations set forth in paragraphs 1-58 hereof.

60.     On and before September 10, 1976, the State entered into negotiations with Illinois Central regarding the purchase of the 145 acres of land as described in paragraph 13 hereof.  During the negotiations between the Plaintiffs and Illinois Central concerning the purchase of the 145 acres, the following representations of material fact were made by the Defendant, Illinois Central, or were implicit in the aforesaid negotiations:

(1) That the 145 acres were suitable for building and construction;

(2) That there were no faults, imperfections, or problems with the 145 acres of land which were not apparent;

(3) That the land was in good shape;

(4) That the land had been kept in good repair;

(5) That the land had been properly maintained;

(6) That such land was suitable for expansion and/or building upon by the State and for construction of the facilities of the State; and

(7) That such land was suitable for the uses and purposes intended and expected by the State.

61.     The above representations, separately and collectively, were relied upon by the State in purchasing the 145 acres as described in paragraph 13.

62.     On or about March 8, 1985, the State learned the above-referenced representations

were false representations of material facts which were made by the Defendant, Illinois Central, in the alternative, (a) willfully to deceive, (b) recklessly without knowledge, or (c) innocently and by mistake.  Such misrepresentations constituted a fraud upon the State and as a proximate result of the aforesaid fraud practiced by the Defendant, Illinois Central, upon the State, the State paid a valuable consideration for the aforesaid property; the State purchased property upon which there existed hazardous substances; the State has been caused to spend certain sums in the investigation of the hazardous substances at, in, and about said property; the State has incurred and will continue to incur response costs to the release and threatened release of hazardous substances; and the State has been otherwise injured and damaged.

WHEREFORE, the foregoing premises considered, the Plaintiffs demand judgment against the Defendant, Illinois Central, in the sum of Fifty Million ($50,000,000.00) Dollars, including punitive damages and costs.

<u>FIFTH CLAIM FOR RELIEF</u>

63.    The Plaintiffs adopt and reallege, as fully as if set out herein, the allegations set forth in paragraph 1-62 hereof.

64.    At the time of the negotiations and subsequent sale of the property described in paragraph 13, portions of the aforesaid property contained and/or were contaminated with hazardous substances of which the Defendant, Illinois Central, knew or should have known.  There arose an obligation and duty on the part of Illinois Central to communicate this material fact to the State because of the relationship between the parties or because of the particular circumstances of the case which were that the parties had an inequality of knowledge and condition as to the conditions existing upon the property.  The inequality of condition was that the State did not know of the

17

existence of hazardous substances at, in, and about said property whereas the Illinois Central had actual knowledge of the condition of the said property.  Further, the Illinois Central not only knew of the serious and hazardous condition of the property but withheld and suppressed this information from the State.

65.     As a proximate result of the suppression of the material facts as aforesaid from the State, the State purchased the property described in paragraph 13 and was injured and damaged as described in paragraph 62.

WHEREFORE, the foregoing premises considered, the Plaintiffs demands judgment against the Defendant, Illinois Central, in the sum of Fifty Million ($50,000,000.00) Dollars, including punitive damages and costs.

<u>SIXTH CLAIM FOR RELIEF</u>

66.     The Plaintiffs adopt and reallege, as fully as if set out herein, the allegations set forth in paragraphs 1-65 hereof.

67.     During the negotiations between the State and the Defendant, Illinois Central, concerning the purchase of the 145 acres as described in paragraph 13, the Defendant, Illinois Central, made the following willful or reckless misrepresentations of material facts to the State or such were implicit in the aforesaid negotiations:

(1) That the 145 acres were suitable for building and construction;

(2) That there were no faults, imperfections or problems with the 145 acres of land which were not apparent;

(3) That the land was in good shape;

(4) That the land had been kept in good repair;

(5) That the land had been properly maintained;

(6) That such land was suitable for expansion and/or building upon by the State and for construction of the facilities of the State; and

(7) That such land was suitable for the uses and purposes intended and expected by the State.

68.     The above willful or reckless misrepresentations were relied upon by the State in purchasing the property as described in paragraph 13.  The above misrepresentations were willful or reckless misrepresentations of material fact and as such constituted a deceit upon the State and the State was injured and damaged as described in paragraph 62.

WHEREFORE, the foregoing premises considered, the Plaintiffs demand judgment against the Defendant, Illinois Central, in the sum of Fifty Million ($50,000,000.00) Dollars, including punitive damages and costs.

## SEVENTH CLAIM FOR RELIEF

69.     The Plaintiffs adopt and reallege, as fully as if set out herein, the allegations set forth in paragraphs 1-68 hereof.

70.     At the time of the negotiations and subsequent sale of the aforesaid property to the State, the Defendant, Illinois Central, knew or should have known that portions of the aforesaid property contained and/or were contaminated with hazardous substances.  The Defendant, Illinois Central, concealed such facts from the State as to deceive and mislead the State, although the State did make a reasonable inspection of the aforesaid property, but said inspection failed to reveal the hazardous conditions existing upon said property.

71.     As a proximate result of the concealment of the material facts of the existence of the

hazardous substance conditions at, in and around the property as aforesaid, the State purchased such property and suffered the injuries and damages as alleged in paragraph 62 hereof.

WHEREFORE, the foregoing premises considered, the Plaintiffs demand judgment against the Defendant, Illinois Central, in the sum of Fifty Million ($50,000,000.00) dollars, including punitive damages and costs.

## EIGHTH CLAIM FOR RELIEF

72.    The Plaintiffs adopt and reallege, as fully as if set out herein, the allegations set forth in paragraphs 1-71 hereof.

73.    Illinois Central knew or should have known that of the abnormally dangerous activities upon the property described in paragraph 13 hereof which could cause harm and/or damage to the State.

74.    The creosoting operations described above constituted an abnormally dangerous activity which was conducted on the property aforesaid with the knowledge and approval of the Defendant, Illinois Central.  The Defendant, Illinois Central, in the alternative, (a) willfully deceived, (b) suppressed, (c) misrepresented, (d) deceived, (e) and/or misled the State during the negotiations of the purchase of the property described in paragraph 13 hereof and as a proximate result thereof the State was injured and damaged as described in paragraph 62.

WHEREFORE, the foregoing premises considered, the Plaintiffs demand judgment against the Defendant, Illinois Central, in the sum of Fifty Million ($50,000,000.00) Dollars, including punitive damages and costs.

## NINTH CLAIM FOR RELIEF

75.     The Plaintiffs adopt and reallege, as fully as if set out herein, the allegations set forth in paragraphs 1-74 hereof.

76.     The creosoting operations conducted on the premises described in paragraph 13 hereof constituted an abnormally dangerous activity.  This abnormally dangerous activity conducted by Reilly Tar and Alabama Wood for, in part, the benefit of Illinois Central and its predecessor the GM&O Railroad, has caused and continues to cause harm and the threat of harm to the State and the environment of the State.

77.     Reilly Tar, Alabama Wood, and Illinois Central are strictly liable for all direct and consequential damages resulting from the continuing public nuisance created by the aforesaid abnormally dangerous activity.

WHEREFORE, the foregoing premises considered, the Plaintiffs demand judgment against the Defendants, Reilly Tar, Alabama Wood and Illinois Central, in the sum of Fifty Million ($50,000,000.00) Dollars, including punitive damages and costs.

## TENTH CLAIM FOR RELIEF

78.     The Plaintiffs adopt and reallege, as fully as if set out herein, the allegations set forth in paragraphs 1-77 hereof.

79.     There is a continuing release of hazardous substances from the property located at the East End of Virginia Street onto adjoining property owned by the State.

80.     This continuing release results from the disposal of hazardous substances by Reilly Tar and Alabama Wood for, in part, the benefit of Illinois Central.

81.     The continuing release constitutes a trespass onto the property of the State.

WHEREFORE, the foregoing premises considered, the Plaintiffs demand judgment against the Defendants in the sum of Fifty Million ($50,000,000.00) Dollars, including punitive damages and costs.

## ELEVENTH CLAIM FOR RELIEF

82.     The Plaintiffs adopt and reallege, as fully as if set out herein, the allegations set forth in paragraphs 1-81 hereof.

83.     Alabama Wood, Reilly Tar and Illinois central knew or should have known that conducting creosoting operations and storage of hazardous waste upon the premises at the East End of Virginia Street in Mobile, Alabama, created an unreasonable risk of harm or injury to the property described in paragraph 13 hereof and to the environment of the State.

84.     Alabama Wood and Reilly Tar had a duty to exercise reasonable care in their creosoting operations and in the storage and disposal of hazardous substances described above and Illinois Central had a duty to ensure that its Lessees exercised reasonable care and the failure of Illinois Central to ensure the exercise of such care constitutes negligence and a continuing public nuisance.

WHEREFORE, the foregoing premises considered, the Plaintiffs request that the Court order Alabama Wood, Reilly Tar and Illinois Central to abate the nuisance upon the property described in paragraph 13 hereof caused by the present migration and threat of migration of hazardous substances and wastes by taking such action as the Court shall deem necessary and sufficient to abate and completely and permanently prevent migration and threat of migration of hazardous substances into the environment at, in, and around the property located at the East End of Virginia Street in Mobile, Alabama.

22

**PLAINTIFFS RESPECTFULLY DEMAND TRIAL BY JURY ON ALL ISSUES SUBJECT TO JURY DETERMINATION.**

/s/ William E. Shreve, Jr.
WALTER M. COOK, JR.          (COOKW6772)
WILLIAM E. SHREVE, JR.       (SHREW3946)
Attorneys for Plaintiffs

OF COUNSEL:
LYONS, PIPES & COOK, P.C.
2 North Royal Street (36602)
Post Office Box 2727
Mobile, Alabama   36652
251/432-4481 - Phone

CERTIFICATE OF SERVICE

I do hereby certify that I have on this 16th day of June, 2006, served a copy of the foregoing pleading on counsel for all parties to this proceeding by the Court's CM/ECF email system or by mailing the same via the United States mail, first class postage prepaid.

R. Craig Kneisel, Esquire
Office of the Attorney General
State of Alabama
11 South Union Street
Montgomery, Alabama   36130

Ian David Rosenthal, Esquire
CABANISS, JOHNSTON,
   GARDNER, DUMAS & O'NEAL
Post Office Box 2906
Mobile, Alabama   36652

Susannah Walter, Esquire
LEMLE & KELLEHER, LLP
Pan American Life Center
601 Ppoydras Street, Suite 2100
New Orleans, Louisiana 70130-6097

Richard Eldon Davis, Esquire
CABANISS, JOHNSTON,
   GARDNER, DUMAS & O'NEAL
Post Office Box 830612
Birmingham, Alabama   35283-0612

David P. Minvielle, Esquire
Benjamin R. Slater, Esquire
Hal C. Welch, Esquire
LEMLE & KELLEHER, LLP
Pan American Life Center
601 Poydras Street, Suite 2100
New Orleans, Louisiana   70130-6097

/s/ William E. Shreve, Jr.
WILLIAM E. SHREVE, JR.

23