**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

STATE OF ALABAMA, et al.,       :

     Plaintiffs,             :

vs.                           :      CA 85-0642-CG-C

ALABAMA WOOD TREATING    :
CORPORATION, et al.,

                                 :

     Defendants.

**ORDER**

This cause is before the Court on plaintiffs' motion to quash and motion for protective order (Doc. 441), defendant Illinois Central's opposition (Doc. 442), and plaintiffs' reply (Doc. 443). Upon consideration of the contents of these pleadings, with attachments, and all other pertinent pleadings in this file, this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(a) & (c)(1).

**FINDINGS OF FACT**

1.    On October 16, 2008, the undersigned entered a modified scheduling order[1] which, in part, instructed the parties to complete Phase II

---

[1]    The Court's July 18, 2006 Rule 16(b) scheduling order, while focusing on Phase I written discovery, is the model form utilized by this Court in all civil actions and set the

fact witness depositions on or before June 30, 2009, unless additional time was

granted for good cause shown. (Doc. 357, at ¶ 2)

---

scheduling plan to be followed in this case unless modified by the undersigned. (*See* Doc. 243) Importantly, this order not only informed the parties that all discovery motions filed–including for protective order and to compel– were to be "brought in a timely manner so as to allow sufficient time for the completion of discovery according to the schedule set by the Court[,]" (*id.* at ¶ 11.b.) but, as well, referenced this Court's "<u>Introduction to Civil Discovery Practice in the Southern District of Alabama</u>, Civil Discovery Committee (1998) (distributed by the Clerk with the Local Rules and published on the Court's website, <u>http://www.als.uscourts.gov</u>)." (*Id.* at ¶ 11.e.) This Court's local discovery practice booklet reads, in relevant part, as follows:

> The parties may conduct discovery (primarily taking depositions) by agreement after the discovery cut-off. Lawyers should be aware, however, that if problems arise during the depositions (such as instructions not to answer questions or failures to produce documents at the depositions) the Court may refuse to resolve the disputes because the depositions are being taken after the discovery cut-off, and without the Court's permission. To ensure that the Court will hear and resolve discovery disputes after the discovery cut-off, either party (preferably both by joint motion) should file a motion with the Court and obtain the Court's approval to conduct discovery out of time. The motion should indicate whether all parties agree to the additional discovery and should notify the Court of the effect, if any, that the additional discovery will have on existing deadlines. As a matter of practice, the Court does not favor discovery after the cut-off which forces changes in other pretrial deadlines.

> Even though the Court occasionally may allow additional discovery upon motion, it is a serious mistake to count upon the likelihood of an extension. When allowed, an extension is normally made upon a showing of good cause for the extension of discovery (including due diligence in the pursuit of discovery prior to cut-off date), specifying the additional discovery needed, its purposes, and the time in which it can be completed.

> Motions for extension of discovery time are normally treated with special disfavor if they are filed after the discovery cut-off date.

<u>Introduction to Civil Discovery Practice in the Southern District of Alabama</u>, *supra,* at ¶ I.

> The parties will continue to make bi-monthly joint status reports
> to the Court regarding their progress toward the completion of
> Phase II discovery. This deadline shall not apply to depositions
> necessarily taken to preserve testimony for trial purposes, and
> the parties will be allowed until thirty days before the pretrial
> conference to complete such depositions unless such time is
> extended by agreement.

(*Id.*) This order recognized as Phase III discovery all discovery related to

expert witnesses. (*See id.* at ¶ 3)

2.      In the parties' final joint status report regarding Phase II

discovery, filed June 18, 2009, the only mention made of the need for a

30(b)(6) deposition is for plaintiffs to take the 30(b)(6) deposition of defendant

Illinois Central Railroad. (Doc. 396, at ¶ 5) This final status report otherwise

reads, in relevant part, as follows:

> The following depositions are currently scheduled to be taken on
> the dates noted: Skeeter McClure, June 26; Roy Hampton, June
> 30; Charles McConnell, June 30 (tentative–awaiting
> confirmation of service on this third-party witness); Joseph
> Threadcraft, July 1; Robert Harris, July 2; Pete Dranka, July 7;
> and John Craun, July 14. Document subpoenas remain
> outstanding to the following third parties, and documents are
> expected to be forthcoming but have not yet been received:
> APM Terminals North America, Inc. and HPA, Inc.
>
> 4.      Several deponents who may need to be deposed
> present special scheduling difficulties: LaDon White, Moffatt &
> Nichol, may need to be deposed when he can be located. He is
> no longer employed by Moffatt & Nichol and his whereabouts
> are currently unknown although efforts to locate him continue.
> David Barger of American Bridge needs to be deposed with

3

regard to certain significant issues, but he has reportedly been working out of the country for some time and is understood to remain out of the country for a month or more yet.

.    .    .

6.    Additional depositions for witnesses scattered around the country need to be scheduled or re-scheduled to firm dates–specifically, Stan Gottlieb (Mobile); Mark Bell (Mobile); Bill Paparis (New York City)[;] Manuel Garmilla (Charlotte, NC)[;] Tom Shafer (Baltimore)[;] and Bob Bennett (Princeton, NJ). All of the remaining witnesses listed in paragraphs 3-6 are believed to be of importance to the claims and defenses made by the parties in this case, and Reilly and IC further believe that the inability to obtain discovery from these witnesses due to scheduling conflicts or unworkable deadlines will be highly prejudicial to their cases.

7.    It is theoretically possible that there may be other individuals who must be deposed as well based on testimony given in the forthcoming depositions, but a significant number of new deponents is not anticipated.

8.    The parties have been making, and continue to make, every effort to complete Phase II discovery as soon as possible. If all goes smoothly, the parties believe that they may be able to complete Phase II discovery on or before August 30 with the probable exception of the depositions of LaDon White and David Barger, but it is impossible for the parties to guarantee that all necessary Phase II depositions can be completed by then.

(*Id*. at ¶¶ 3-4 & 6-8)

3.    Five days later, on June 23, 2009, the parties filed a joint motion for extension of all scheduled deadlines based upon the same facts as set forth

in the final status report. (*Compare* Doc. 397 *with* Doc. 396) "[T]he parties jointly move the Court for a sixty-day extension of all currently scheduled deadlines–except for the period between the dispositive motion deadline and the pretrial conference, for which the parties request an extension of 75 days. Attached to this motion, for clarity's sake, is a timetable reflecting the proposed new deadlines for the completion of discovery, including expert discovery, for dispositive motions to be filed, and for pretrial and trial." (Doc. 397, at ¶ 6) The undersigned granted the joint motion to extend all scheduled deadlines and in doing so tracked the proposed timetable submitted by the parties. (*Compare* Doc. 400 *with* Doc. 397, Attached Proposed New Timetable) Neither the parties' proposed timetable or the Court's Order of July 8, 2009 specifically referenced a new date for the completion of Phase II discovery (*see id*.); however, given the contents of the final joint status report, the parties' joint motion to extend all scheduled deadlines, and the undersigned's granting of the joint motion to extend all deadlines, the Court implicitly extended the completion date of Phase II discovery to August 30, 2009 (*compare* Doc. 400, at 1 ("[T]he joint motion to extend deadlines is **GRANTED**.") *and* Doc. 397, at ¶ 6 ("[T]he parties jointly move the Court for a sixty-day extension of all currently scheduled deadlines–except for the

period between the dispositive motion deadline and the pretrial conference, for which the parties request an extension of 75 days.") *with* Doc. 357, at ¶ 2 (all Phase II fact witness depositions to be completed by June 30, 2009)).

4.      In all motions filed since the Court's July 8, 2009, the parties have only sought clarification regarding issues related to expert discovery and the timing of same (*see* Docs. 410, 414 & 439), as well as the time for the filing of dispositive motions (*see* Doc. 414 & 439). While the parties, in their joint motion for extension of certain scheduled deadlines filed October 9, 2009, indicated that the need for requesting extensions related to expert discovery and submission of dispositive motions was necessitated, in part, to the fact that Phase II fact witness discovery had not been completed (Doc. 414 at ¶ 3 ("Another impediment to production of defendants' expert reports and submission of dispositive motions in compliance with the current scheduling order is the completion of Phase II fact witness discovery. The parties have worked to complete Phase II discovery in a timely manner; however, several fact witness depositions remain to be taken and documents continue to be produced. Scheduling issues have prevented the completion of this phase of discovery. Specifically, the trial schedule of plaintiffs' lead counsel, Walter Cook, precluded the scheduling of any depositions for several weeks. Plaintiffs

have indicated a desire to depose Jim Bratina and Bill Justin, both former Reilly employees. Illinois Central has requested the depositions of Hal Hudgins, Ken Barefield, and Gerald Kichler, all employees of the Alabama State Port Authority. Reilly may also need to depose Charles Wyckoff, an individual disclosed in Plaintiff's Seventh Amended Initial Disclosures on July 31, 2009, and Lynn Melton of Safety Guidance Specialists, Inc. Defendants may also need to re-open the deposition of Joseph Threadcraft based on revisions to plaintiffs' damages claim contained in the Seventh Revised Exhibit A to Plaintiffs' Seventh Amended Initial Disclosures served on August 13, 2009 – after Mr. Threadcraft's deposition."))[2] the parties never sought this Court's further extension of the time for completing Phase II fact witness discovery (*see id.*). Therefore, since at least August 31, 2009, the parties have been engaging in Phase II fact witness discovery by consent, without the official authorization, permission and protection of the Court.

5.     Plaintiffs filed the instant motion to quash and motion for protective order on March 24, 2010. (Doc. 441) Therein, plaintiffs seek to quash the notice of 30(b)(6) deposition of Alabama State Port

---

[2]     In granting this motion, the undersigned determined that there was a need to more the final pretrial conference and date set for trial. (*See* Doc. 415, at ¶¶ 3 & 4)

Authority–Terminal Railway Alabama State Docks[3] served by defendant Illinois Central on March 12, 2010, on the basis that the time for taking such deposition has long since expired and plaintiffs never agreed to the taking of said deposition outside the deadline set for the expiration of Phase II discovery. (*See id.*)

6.      In its response in opposition, Illinois Central contends that "(1) the deposition will not upset the [December, 2010] trial date; (2) fact discovery has continued long after the deadline expired; (3) the plaintiffs' claims have repeatedly changed and expanded; and (4) [it] has requested this deposition from the plaintiffs since October 2009 and have only now been informed that the witness would not be produced." (Doc. 442, at 1)

> Because of the complexity of the case, fact discovery has continued to take place with consent of the parties to the current time. For this reason, the parties did not formally seek a change in the originally scheduled Phase II fact discovery deadline, which technically expired a year and a half prior to the currently scheduled trial. The plaintiffs have actively participated in fact discovery and continue to do so, but now seek to quash this deposition based solely on the expired deadline. The plaintiffs admit that they continue to depose fact witnesses by agreement with other parties and have outstanding requests for dates of fact witnesses  whom they wish to depose; in fact, until the filing of this motion, plaintiffs had delayed complying with IC's requests ostensibly for the stated reason that they required completion of

---

[3]      It is clear that the defendants have taken the 30(b)(6) deposition of "the Alabama State Port Authority, of which the Terminal Railway is a division." (Doc. 441, at ¶ 5)

the depositions requested by plaintiffs before they would produce their witnesses. Curiously, while plaintiffs refuse to produce the representative of the Terminal Railway for deposition on the basis of the expired deadline, they do not oppose producing other ASPA employees whose depositions were requested at the same time. The plaintiffs should not be permitted to pick and choose which fact depositions they will agree to produce and those they will not.

The plaintiffs' claims in this matter have repeatedly changed and expanded since the inception of this litigation and the filing of this Court's original scheduling order. The plaintiffs have amended their complaint six times to add new claims and allegations against the defendants. Since September 2006, when the plaintiffs filed their Initial Disclosures which included as "Exhibit A" and "Exhibit B" setting forth their response costs to date[,] [p]laintiffs have amended those disclosures six times and have filed nine "Revised Exhibit As"; the plaintiffs' most recent Ninth Revised Exhibit A was produced in February 2010 and increases the amount claimed in response costs 400% above the claims asserted in September 2006. Amended and expanded claims (includ[ing] belated claims that costs associated with the construction of the Choctaw Point Connection Terminal should be counted as response costs) have created issues which warrant additional discovery. To prohibit discovery regarding those new claims would result in undue prejudice to the defendants.

IC has requested the deposition of the Terminal Railway from the plaintiffs since October 2009. Initially, IC designated Mr. Barefield, who is believed to be the director of the Railway, by name. After four months of being told by plaintiffs' counsel that the deponents required by IC would not be produced until after fact depositions requested by plaintiffs had been taken in February 2010, counsel for IC sent plaintiffs' counsel a draft copy of a Notice of 30(b)(6) Deposition to the Terminal Railway and asked for dates to hold the deposition. Because of the plaintiffs' continued refusal to produce the requested witness, IC noticed the deposition and served the notice upon the plaintiffs

on March 12, 2010.

(*Id.* at 2-3 (internal citation omitted; emphasis in original))

      7.    The reply of the plaintiffs to Illinois Central's opposition reads, in relevant part, as follows:

> By Illinois Central's own admission, Illinois Central asked for the deposition of an <u>individual</u>, Ken Barefield, who Illinois Central says it "believe[s] to be the director of the Railway"[]. Asking for the deposition of an individual is hardly the same as asking for the deposition of an organization under Rule 30(b)(6). Again[,] according to Illinois Central's own filings, Illinois Central first mentioned a 30(b)(6) deposition of the Terminal Railway in an email dated February 24, 2010 []. Plaintiffs did not and do not agree to any such deposition.

>       .     .     .

> The topics in Illinois Central's 30(b)(6) notice concern the Terminal Railway's transporting hazardous substances, its activities at the contaminated site, economic benefit derived by the Terminal Railway from operation of the site, the Terminal Railway's purchases of materials from companies that operated the site, persons who have inspected or visited the site, and fees on rail cars delivered to or pulled from the McDuffie Island Terminal []. None of the topics concern Plaintiffs' response costs, as revised or otherwise.

>       As Plaintiffs pointed out in their motion to quash and for protective order, the Defendants have already taken the 30(b)(6) deposition of the Alabama State Port Authority of which the Terminal Railway is a division. Illinois Central offers no justification or authority to support deposing a division of an organization that the party has already deposed. Illinois Central is in effect attempting to take a second deposition of the Port Authority without leave of Court. The fact is that when Illinois

Central noticed the Port Authority's deposition, it could have, but failed to, include the topics now listed in its notice of the Terminal Railway's deposition.

Illinois Central seems to believe the Court's Phase II deadline is of no consequence. Illinois Central says the deadline "technically expired" some[]time ago but that the parties have continued to conduct fact-witness discovery. Plaintiffs understand the parties were and are bound by the deadline and that additional fact-witness depositions can only be taken by agreement.

Illinois Central also gives the impression the parties have conducted extensive fact-witness discovery after the deadline . . . . To the contrary, the parties have not conducted any fact-witness depositions since the August 29, 2009 Phase II deadline. The only depositions taken since then have been those of the parties' experts, under Phase III discovery.

Over a month prior to the Phase II deadline, on July 23, 2009, Plaintiffs asked for the depositions of James Bratina and W.A. Justin, who are current or former employees of Defendant Vertellus Specialties, Inc. The parties were unable to schedule or take these depositions by the deadline. Vertellus agreed to allow Plaintiffs to depose them after the deadline. These are the only fact-witness depositions Plaintiffs are seeking to take after the deadline. Illinois Central, in addition to the Terminal Railway's deposition, noticed the depositions of Hal Hudgins and Joseph Threadcraft (current or formed Port Authority employees). Plaintiffs have agreed to allow Illinois Central to take Hudgins and Threadcraft's depositions after the deadline. However, Plaintiffs did not and do not agree to any 30(b)(6) deposition of the Terminal Railway.

(Doc. 443, at 1-2 & 3-5 (internal citations omitted))

## CONCLUSIONS OF LAW

11

1.      "Rule 16 of the Federal Rules of Civil Procedure authorizes the court to enter pretrial scheduling orders, which set dates for the completion of discovery, the hearing of dispositive motions, trial, and other matters." *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C. D. Cal. 2003). The broad discretion set forth in Rule 16 "is necessary to preserve the integrity and purpose of the pretrial scheduling order and to allow the trial judge qualitative and quantitative management over a judicial proceeding from an early stage in order to reduce costs and delays." *Gavenda v. Orleans County*, 1996 WL 377091, *1 (W.D. N.Y. 1996) (footnotes omitted); *see Zivkovic v. Southern California Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002) ("'The district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion.'").

2.      The undersigned has set forth, perhaps *ad nauseam*, various contents of the scheduling orders entered in this case, as well as the arguments of plaintiffs' counsel and counsel for Illinois Central regarding the instant motion to quash and motion for protective order, in order to make clear that this Court is decidedly not being asked to modify the scheduling order entered

12

in this case *nunc pro tunc* to August 30, 2009 (or June 30, 2009) to allow for additional fact-witness discovery (i.e., depositions)[4] and, therefore, at this late date, approximately seven months after the official close of fact-witness discovery, the Court need decline to do as the moving parties request, that is, quash the noticed 30(b)(6) deposition of the Railway Terminal, just as it would decline to compel the attendance of the Railway Terminal's 30(b)(6) deponent upon a failure to appear. The parties have entered the realm of discovery by consent with respect to all remaining fact-witness discovery and cannot look to this Court to mediate any disputes arising with respect to such discovery. *Compare Mount Vernon Fire Ins. Co. v. National Fire Ins. Co. of Hartford*, 2008 WL 2397606, *2 (M.D. Fla. 2008) ("The discovery cut-off date means that all discovery must be completed by that date. Untimely discovery requests are subject to objection on that basis. Although the parties, by agreement, may conduct discovery after the completion date, the parties should not expect the court to resolve discovery disputes arising after the discovery completion date." (internal citations omitted)); *AB Diversified Enterprises, Inc. v. Global*

---

[4]   Presumably, this is because none of the parties, at this late date, could make the good cause showing necessary to support such a modification. *See Sosa v. Airprint Systems, Inc*., 133 F.3d 1417, 1418 (11th Cir. 1998) ("This good cause standard [in Fed.R.Civ.P. 16(b)(4)] precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'").

*Transport Logistics, Inc.,* 2007 WL 1362632, *1 (S.D. Fla. 2007) ("In the event the parties agree among themselves to extend the discovery deadline, and without Court approval as is the case here, they must do so with the clear understanding that the Court will not mediate any resulting dispute. . . . In this case, the discovery cutoff has long since passed. . . . The parties' agreement, written or not, to serve or respond to paper discovery after the discovery cutoff will not be enforced by the Court so long after the Court's cutoff date has passed. And, a motion to compel filed more than two months after the discovery cutoff is clearly untimely. Therefore, the Defendant's pending motion to compel filed is procedurally defective and must be denied on that basis."); *and Tai-Pan, Inc. v. Keith Marine, Inc.,* 1997 WL 714898, *11 (M.D. Fla. 1997) ("As it is stated in the Court's Order, motions pertaining to discovery shall be filed prior to the completion date of discovery. Plaintiff filed the present motion over four months after the discovery deadline. Further, although the parties had consented to an extension of discovery deadlines in this case, those deadlines have long since passed, and even if the continuance of discovery were still in effect, the Court *will not hear discovery disputes arising during the stipulated continuance.*" (internal citations omitted; emphasis in original)) *with* Doc. 243, ¶ 11.b. ("A motion for protective order

pursuant to Fed.R.Civ.P. 26(c), a motion for physical and mental examination pursuant to Fed.R.Civ.P. 35(a), a motion to determine sufficiency pursuant to Fed.R.Civ.P. 36(a), and a motion to compel pursuant to Fed.R.Civ.P. 37 shall be brought in a timely manner so as to allow sufficient time for the completion of discovery according to the schedule set by the Court.") *and* <u>Introduction to Civil Discovery Practice in the Southern District of Alabama</u>, ¶ I., Civil Discovery Committee (1998) ("The parties may conduct discovery (primarily taking depositions) by agreement after the discovery cut-off. Lawyers should be aware, however, that if problems arise during the depositions (such as instructions not to answer questions or failures to produce documents at the depositions) the Court may refuse to resolve the disputes because the depositions are being taken after the discovery cut-off, and without the Court's permission.").

3.      In light of the foregoing, the Court finds plaintiffs' motion to quash and motion for protective order (Doc. 441) both untimely and procedurally deficient. It is, therefore, **MOOTED**.

## <u>CONCLUSION</u>

The plaintiffs' motion to quash and motion for protective order (Doc.

441) is determined to be **MOOT**.

**DONE** and **ORDERED** this the 5th day of April, 2010.

   s/WILLIAM E. CASSADY       
**UNITED STATES MAGISTRATE JUDGE**