IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STATE OF ALABAMA )
ALABAMA STATE PORT AUTHORITY, )
)
    Plaintiffs, )
)
vs. )
) Case No.: 01:85-cv-642-CG
ALABAMA WOOD TREATING )
CORPORATION, et al., )
)
    Defendants. )
)
)

## CONSENT DECREE

**1.0.** *Background*

    1.1. The State of Alabama (hereinafter "the State") and the Alabama State Port Authority (f/k/a the Alabama State Docks) (hereinafter "ASPA") filed a complaint on May 6, 1985 pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §9607, et seq., for recovery of response costs incurred or to be incurred by Plaintiffs to abate an alleged release or threatened release of hazardous substances, and for damages to natural resources, and for other claims with respect to property previously owned by defendant Illinois Central Railroad Company (hereinafter "ICR") and leased and operated by Vertellus Specialties Inc. (f/k/a Reilly Industries Inc.) (hereinafter "Vertellus"), among other defendants. Plaintiffs' complaint has been subject to six amendments.

    1.2. ICR and Vertellus have counterclaimed against Plaintiffs and dispute all liability to Plaintiffs in this matter. The Plaintiffs dispute all liability as to the counterclaims of the Defendants.

1.3. ICR and Vertellus also have crossclaimed against each other on various statutory and contractual grounds.

1.4. The State, ASPA, ICR and Vertellus ("the Parties") have agreed to enter into this Consent Decree in order to resolve amicably all matters in dispute and to avoid the expense and distraction of continued prolonged and complicated litigation between and among the Parties. By entering into this Consent Decree, the Parties desire to resolve all claims raised in this action, as well as such further matters as defined below.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

**2.0.** *Jurisdiction*

2.1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, 42 U.S.C. §§9607 and 9613. This Court also has personal jurisdiction over the Parties. Solely for the purposes of this Consent Decree and the underlying complaint(s), the Parties waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. The Parties shall not challenge the terms of this Consent Decree or the Court's jurisdiction to enter and enforce this Consent Decree.

**3.0.** *Parties Bound*

3.1. This Consent Decree applies to and is binding upon Plaintiffs and Defendants and their officers, directors, agents, employees, successors in interest and assigns. Any change in ownership or corporate status shall in no way alter any obligations under this Consent Decree.

**4.0.** *Definitions*

4.1. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated thereunder shall have the meaning assigned to them in such statutes or regulations. Whenever terms listed below are used in this Consent Decree, the following definitions shall apply:

4.2. "*Action*" shall mean Case No. 85-0642-B in the United States District Court for the Southern District of Alabama, Southern Division (the "Court"), entitled <u>State of Alabama, et al. v. Alabama Wood Treating Corporation, et al.</u>, including Claims, Counterclaims and Crossclaims made therein.

4.3. "*ASPA*" shall mean the Alabama State Port Authority, formerly known as the Alabama State Docks Department of the State of Alabama, and all its divisions, departments, officers, attorneys, agents, officials and employees and any successor agencies or authorities.

4.4. "*Claims*," "*Counterclaims*," and "*Crossclaims*" each shall mean actions, causes of action (in law or equity), debts, liens, fines, penalties, contracts, agreements, promises, liabilities, claims, demands, damages, losses, costs or expenses, of any nature whatsoever, known or unknown, fixed or contingent, relating to the Site or the Action, including but not limited to, claims for recovery of the costs of any past, present or future Response Action, claims for attorneys' fees, interest or other costs incurred in or related to the Action, and claims for past, present, or future injury or damages to or loss to or from the Site.

4.5. "*Defendants*" shall mean Vertellus and ICR.

4.6. "*Effective Date*" shall mean the date on which the Court enters this Consent Decree.

4.7. "*ICR*" shall mean The Illinois Central Railroad Company, an Illinois corporation, its successors, assigns, and predecessors-in-interest.

4.8. "*Parties*" or "*Party*" shall mean, collectively or individually as to each, the parties signatory to this Agreement; viz: the State, ASPA, Vertellus and ICR, their representatives, successors and assigns.

4.9. "*Response Action*" shall mean any response, closure, investigation, study, removal, remedy, remedial action, clean-up, abatement, enforcement, encapsulation, capping, excavation, disposal, monitoring program or other actions or work in response to the release or threatened release of a hazardous substance, whether or not required under State or Federal law.

4.10. "*Site*" shall mean the Choctaw Point Terminal complex, adjacent to the Mobile River and Garrows Bend in the City of Mobile, Mobile County, Alabama, and encompassing approximately 370 acres of uplands, lowlands, and reclaimed land, as further described in the US Army Corps of Engineers <u>Final Environmental Impact Statement for Choctaw Point Terminal Project, Mobile, Alabama</u> (August 2004). The Site includes, but is not limited to the former Alabama Wood Treating Site, an approximately 14-acre parcel located at the east end of Virginia Street, along the former west bank of the Mobile River.

4.11. "*State*" shall mean the State of Alabama and all of its political subdivisions and bodies politic, including all agencies, departments, divisions, entities, officers, elected and appointed officials, employees, attorneys and agents thereof.

4.12. "*Vertellus*" shall mean Vertellus Specialties Inc., an Indiana corporation, formerly known as Reilly Industries, Inc., its successors, assigns, and predecessors-in-interest.

## 5.0. *General Provisions*

5.1. The objective of the Parties in entering into this Consent Decree is to resolve all Claims, Counterclaims, and Crossclaims that have been raised or asserted or could have been raised or asserted in the Action and any Claims, Counterclaims, and Crossclaims, known or unknown, relating to the prior operations or ownership of the Site by any Defendant or by the State or ASPA or Alabama Wood Treating Corp. In order to achieve this objective, the

Defendants shall make certain payments to Plaintiffs subject to an express waiver, release and covenant not to sue, all as specified below in this Consent Decree.

5.2. The entry of the Parties into this Consent Decree shall not constitute (a) an admission or adjudication with respect to any matter alleged in or arising out of the Complaint filed in this action, except as is necessary to establish subject matter jurisdiction herein, or (b) an admission of or evidence of any wrongdoing or misconduct or liability on the part of any Party or any of its employees, representatives or affiliated persons.

**6.0.** *Settlement Payment*

6.1. Vertellus shall pay Plaintiffs the sum of nine million, eight hundred thousand dollars ($9,800,000.00) and ICR shall pay Plaintiffs the sum of four million, two hundred thousand dollars ($4,200,000.00) (collectively, the "Settlement Proceeds"), pursuant to the terms set forth herein. Vertellus and ICR shall each be severally liable for these allocated portions of the Settlement Proceeds. Payment of the Settlement Proceeds shall be made as follows:

6.1.1. ICR shall pay four million, two hundred thousand dollars ($4,200,000.00) within 30 days of the Effective Date;

6.1.2. Vertellus shall pay six million, five hundred and thirty-three thousand, and three hundred and thirty-three dollars ($6,533,333.00) within 30 days of the Effective Date; and

6.1.3. Vertellus shall pay three million, two hundred and sixty-six thousand and six hundred and sixty-seven dollars ($3,266,667.00) on or before September 30, 2011.

6.1.4. No further payments of any nature or kind shall be made by Defendants.

6.2. All payments shall be made by wire transfer to the following account:

Regions Bank
ABA 062 00 00 19
For Credit to Alabama State Port Authority

Account No. 00-404-870

6.3 This Consent Decree constitutes a judgment in favor of the State and ASPA for the payments specified in ¶ 6.1. In the event of any default in payment, the State and ASPA may immediately execute on and enforce the judgment, but only against the Defendant in default.

**7.0.** *Release, Waiver and Covenant Not To Sue by Plaintiffs*

7.1. In consideration for the mutual obligations created by this Consent Decree, the State and ASPA hereby release, waive and covenant not to sue or to take administrative action against Vertellus and ICR, and with respect to each, its past, present and future parents, subsidiaries, affiliates, divisions, principals, predecessors, successors in interest, assigns, partners, servants, representatives, attorneys, directors, officers, employees, agents, and all other persons, joint ventures, partnerships, entities or corporations with whom any of the former have been, are now, or may hereinafter be affiliated as a successor or otherwise, with respect to:

7.1.1. Any and all Claims of any kind or nature raised or asserted in the Action, or which could have been raised or asserted in the Action; and

7.1.2. Any Claim, known or unknown, relating to the prior operations or ownership of the Site, or any portion thereof, by Vertellus or ICR, or with regard to each, its predecessors.

7.2 Within 60 days of the Effective Date, notice of this Consent Decree, including the foregoing release, waiver and covenant not to sue, shall be recorded by the State and/or ASPA, as the case may be, in the Mobile County, Alabama probate records as an equitable servitude subjecting future grantees of the Site to the terms of release, waiver and covenant not to sue in the form attached hereto as <u>Exhibit A</u>, and shall forward copies of the duly recorded instruments to Defendants. The State and ASPA make no warranty or guaranty as to whether the servitude effectively binds parties other than the State and ASPA to the terms of the servitude, nor shall the

State or ASPA be held in any way responsible or liable for any breach of the servitude by parties other than the State or ASPA. The Defendants rely on their own counsel as to the terms, sufficiency, and effectiveness of the servitude.

### *8.0. Release, Waiver and Covenant Not to Sue by Defendants*

8.1. In consideration for the mutual obligations created by this Consent Decree, Vertellus and ICR hereby each release, waive and covenant not to sue each other, the State and/or ASPA with respect to:

8.1.1 Any and all Claims, Counterclaims, or Cross-Claims of any kind or nature raised or asserted in the Action, or which could have been raised or asserted in the Action; and

8.1.2 Any Claim, Counterclaim, or Cross-Claim, known or unknown, relating to the prior operations or ownership of the Site, or any portion thereof, by Vertellus or ICR or the State or ASPA or Alabama Wood Treating Corp., or with regard to each, its predecessors.

### *9.0. Dispute Resolution*

9.1. Any dispute arising under or with respect to the Consent Decree shall in the first instance be subject to informal negotiations for a period of thirty (30) days. In the event the Parties cannot resolve a dispute by the end of informal negotiations, then the Parties shall seek to resolve the dispute through a third-party neutral (who shall be Michael Upchurch provided he is available) for a period not to exceed ninety days from referral to the neutral. Upon conclusion, if the dispute remains unresolved, each Party is free to file a motion with the Court at any time seeking to enforce or interpret the Consent Decree. In the event that proceedings are instituted to enforce the Consent Decree, the Party substantially prevailing in such proceedings shall be awarded and paid all reasonable costs and attorneys' fees incurred therewith.

*10.0. Choice of Law*

10.1. This Consent Decree shall be governed by and construed in accordance with the laws of Alabama, except that any and all questions arising pursuant to CERCLA or the Resource Conservation and Recovery Act, 42 U.S.C. §§6901 et seq. ("RCRA") shall be interpreted in accordance with CERCLA or RCRA, as applicable, and other applicable federal law.

*11.0. Modification*

11.1. No modification or amendment may be made to this Consent Decree except in writing agreed to and signed by each Party and expressly purporting to amend or modify this Consent Decree and as approved by the Court.

*12.0. Authority*

12.1. Each Party represents and warrants that it has the authority to enter into this Consent Decree and that all necessary procedures and approvals have been followed to authorize their representatives to execute this Consent Decree on its behalf.

*13.0. Reformation*

13.1. If any part of any provision of this Consent Decree is held to be illegal, void, voidable, invalid, nonbinding or unenforceable in its entirety or partially or as to any Party, for any reason, such provision may be changed, consistent with the intent of the Parties hereto, to the extent reasonably necessary to make the provision, as so changed, legal, valid, binding and enforceable.

*14.0. Headings*

14.1. The captions and headings contained in this Consent Decree have been inserted for the convenience of reference only, and such headings shall not in any way restrict or modify any of the terms or provisions hereof. Terms used in the singular shall be read in the plural and

vice versa. Where a defined term refers to more than one person, use of that defined term shall be deemed to be a reference to all persons coming within its definition, as the context requires.

## 15.0. *Retention of Jurisdiction*

15.1. The Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes. Promptly upon completion of the payment obligations set forth in Section 6.1 above, the State and ASPA shall execute a satisfaction of judgment and the State, ASPA and the paying Party shall move the Court for dismissal of the Claims and Counterclaims between the State, ASPA, and the paying Party, with prejudice.

## 16.0. *Notices*

16.1. Any notice to a Party shall be given by mailing such notice by certified mail, return receipt requested, addressed as follows:

As to the State of Alabama:

> Troy King
> Attorney General, State of Alabama
> Attention: Robert D. Tambling
> Assistant Attorney General
> 500 Dexter Avenue
> Montgomery, Alabama 36130-0152

As to Alabama State Port Authority:

> James K. Lyons
> Director and CEO
> Alabama State Port Authority

P.O. Box 1588
Mobile, Alabama 36633-1588

As to Vertellus Specialties Inc.

    Vertellus Specialties Inc.
    201 N. Illinois Street
    Suite 1800
    Indianapolis, IN 46204
    Attn: General Counsel

As to Illinois Central Railroad Company:

    Rick Verkler, Esq.
    Illinois Central Railroad Company
    17641 S. Ashland Ave.
    Homewood, IL 60430

**17.0.** *Waiver*

17.1. No waiver of any provision of this Consent Decree shall be valid unless in writing and signed by the Party against whom enforcement of the waiver is sought. No course of dealing, delay in acting, or other purported waiver of compliance with any provision of this Consent Decree shall be construed as a continuing waiver, or as a waiver of any subsequent violation of any such provision or any rights or remedies with respect thereto.

SO ORDERED THIS 8th DAY OF NOV , 2010

                                        s/Callie V. S. Granade
                                        United States District Judge

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>State of Alabama, et al. v. Alabama Wood Treating Corporation, et al.</u>, Civil Action No. 85-0642-C.

State of Alabama

By: *[signature]*

Name: <u>Robert D. Tambling</u>

Title: <u>Assistant Attorney General</u>

Alabama State Port Authority

By: _____

Name: James K. Lyons

Title: <u>Director and CEO</u>

Vertellus Specialties Inc.

By: _____

Name: _____

Title: _____

Illinois Central Railroad Company

By: _____

Name: _____

Title: _____

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>State of Alabama, et al. v. Alabama Wood Treating Corporation, et al.</u>, Civil Action No. 85-0642-C.

State of Alabama

By: _____

Name: <u>Robert D. Tambling</u>

Title: <u>Assistant Attorney General</u>

Alabama State Port Authority

By: *(signature)*

Name: James K. Lyons

Title: <u>Director and CEO</u>

Vertellus Specialties Inc.

By: _____

Name: _____

Title: _____

Illinois Central Railroad Company

By: _____

Name: _____

Title: _____

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>State of Alabama, et al. v. Alabama Wood Treating Corporation, et al.</u>, Civil Action No. 85-0642-C.

State of Alabama

By: _____

Name: <u>Robert D. Tambling</u>

Title: <u>Assistant Attorney General</u>

Alabama State Port Authority

By: _____

Name: James K. Lyons

Title: <u>Director and CEO</u>

Vertellus Specialties Inc.

By: /s/ Thomas E. Meservey

Name: <u>THOMAS E. MESERVEY</u>

Title: <u>Corporate Counsel, Environmental</u>

Illinois Central Railroad Company

By: /s/ Michael T. Novak

Name: <u>MICHAEL T. NOVAK</u>

Title: <u>GENERAL COUNSEL</u>

EXHIBIT A

The following provisions are to be incorporated into an instrument and recorded in the Mobile County, Alabama probate records as a servitude that runs with the land and is binding upon the Grantor, its respective successors and assigns, including all future grantees of the Property, all of which are deemed to have accepted and agreed to be bound by the terms hereof:

REAL SERVITUDE

The record owner, _____, hereby imposes the following servitude on the [Site], more particularly described as follows (collectively, the "Property"):

the Choctaw Point Terminal complex, adjacent to the Mobile River and Garrows Bend in the City of Mobile, Mobile County, Alabama, and encompassing approximately 370 acres of uplands, lowlands, and reclaimed land, as further described in the US Army Corps of Engineers Final Environmental Impact Statement for Choctaw Point Terminal Project, Mobile, Alabama (August 2004). The Site includes, but is not limited to, the former Alabama Wood Treating Site, an approximately 14-acre parcel located at the east end of Virginia Street, along the former west bank of the Mobile River.

WHEREAS, pursuant to and in consideration of a Consent Decree entered in the matter entitled State of Alabama, et al. v. Alabama Wood Treating Corporation, et al., Case No. 85-0642-B in the United States District Court for the Southern District of Alabama, Southern Division (the "**Action**"), the State of Alabama and the Alabama State Port Authority undertook the obligation to record the release, waiver and covenant not to sue provision of the Consent Decree in the land records of the property addressed by the Consent Decree in order to subject future grantees of the Property to the terms of release, waiver and covenant not to sue. A copy of the Consent Decree is attached hereto.

NOW, THEREFORE, by this instrument there is created, declared and established at the Property the following real servitude, enforceable at law and in equity, which shall run with the land and remain in full force and effect in perpetuity from the date hereof, irrespective of any sale, conveyance, alienation, or other transfer of any interest or estate in such Property.

1.0. The current title holder, each grantee and transferee of any interest in the Property, and their successors, assigns and heirs hereby release, waive and covenant not to sue Vertellus Specialties Inc. and Illinois Central Railroad Company, and with respect to each, its past, present and future parents, subsidiaries, affiliates, divisions, principals, predecessors, successors-in-interest, assigns, partners, servants, representatives, attorneys, directors, officers, employees, agents, and all other persons, joint ventures, partnerships, entities, or corporations with whom any of the former have been, are now, or may hereinafter be affiliated as a successor or otherwise, with respect to:

1.1. Any and all Claims of any kind or nature raised or asserted in the Action, or which could have been raised or asserted in the Action; and

1.2. Any Claim, known or unknown, relating to the prior operations or ownership of the Property, by Vertellus Specialties Inc. or Illinois Central Railroad Company, or with regard to each, its predecessor.

2.0. For purposes herein, the term "**Claim**" shall mean actions, causes of action (in law or equity), debts, liens, fines, penalties, contracts, agreements, promises, liabilities, claims, demands, damages, losses, costs or expenses, of any nature whatsoever, known or unknown, fixed or contingent, relating to the Site or the Action, including but not limited to, claims for recovery of the costs of any past, present or future Response Action, claims for attorneys' fees, interest or other costs incurred in or related to the Action, and claims for past, present, or future injury or damages to or loss to or from the Property. "**Response Action**" shall mean any response, closure, investigation, study, removal, remedy, remedial action, clean-up, abatement, enforcement, encapsulation, capping, excavation, disposal, monitoring program or other actions or work in response to the release or threatened release of a hazardous substance, whether or not required under State or Federal law.

3.0. A copy of this servitude shall be provided by the owner(s) of the Property to all respective successors, assigns and transferees of the Property, and, as a condition of the sale, assignment, or transfer of any interest in the Property, each such successor-in-interest or title, assignee, or transferee, shall specifically agree to be subject to this servitude.

4.0. If any provision of this servitude is held to be invalid by any court of competent jurisdiction, the invalidity of such provision shall not affect the validity of any other provision hereof. All such other provisions shall continue unimpaired in full force and effect.

5.0 The State and ASPA make no warranty or guaranty as to whether this servitude effectively binds parties other than the State and ASPA to the terms of the servitude, nor shall the State or ASPA be held in any way responsible or liable for any breach of the servitude by parties other than the State or ASPA.

The undersigned persons executing this Real Servitude on behalf of the owner(s) of the Property represent and certify that they are duly authorized and have been fully empowered to execute this Servitude.

IN WITNESS WHEREOF, the owner(s) of the Property have caused this Servitude to be executed on this ___ day of ___, 2010.

By:_____

Sworn to and subscribed before me this ___ day of _____, 201_.

[SEAL]

_____
Notary Public
My Commission expires: _____, 201_.